**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leo KLEIN, Defendant–Appellant.**

**No. 87–3094.**

United States Court of Appeals, Ninth Circuit.

Argued April 5, 1988.

Submitted Oct. 31, 1988.

Decided Nov. 4, 1988.

John W. Lundin, Seattle, Wash., for defendant-appellant.

Kenneth G. Bell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Appellant, Leo Klein, was convicted of conspiracy to distribute cocaine, under 21 U.S.C. § 846, and of possession with intent to distribute cocaine in excess of five hundred (500) grams, under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Supp. IV 1986). He was sentenced to five years imprisonment on each count, these terms to run concurrently.

Klein argues: (1) that his arrest was without probable cause and required a warrant, (2) that the search of his vehicle and "cutting open" of a package found therein required a warrant, (3) that the government failed to prove knowledge of possession of more than 500 grams of cocaine, and (4) that the five-year mandatory minimum sentence, imposed under 21 U.S.C. § 841(b)(1)(B), unconstitutionally violates the eighth amendment, separation of powers, due process and equal protection.

We affirm.

## I

On December 3, 1986, Canadian law enforcement officers learned, from a reliable informant, that a transaction would occur involving one or two kilograms of cocaine within the week. The informant identified a prospective participant in this exchange, Terry Germain.

On December 5, 1986, while under surveillance, Germain met appellant's codefendant, Linn. On that day, Linn engaged in a series of sizable cash transactions [1] in Vancouver, British Columbia, Canada.

On December 8, 1986, Linn crossed the United States–Canadian border and registered in the Vance Hotel, Seattle, Washington.

On December 9, 1986, law enforcement officers learned from the informant that cocaine would arrive in Seattle from Miami that same day. They learned that a second individual would transport the cocaine from Seattle to Vancouver, and that the cocaine was scheduled to arrive in Vancouver on December 11, 1986.

On the evening of December 9, Linn made two telephone calls from his hotel lobby. Both calls were overheard by a DEA agent. One call pertained to the status of Eastern Airlines "flight 86," a scheduled Miami arrival. The other involved Linn assuring another party that Linn would make contact with that party in one hour.

Shortly thereafter, Linn carried a briefcase to the Seattle Sheraton Hotel, in which codefendant Adler had registered. Adler had listed his home address as "Coconut Grove, Florida." Adler had deposited a bulky envelope in the hotel safety deposit box. A short time earlier, Adler had telephoned Linn's hotel.

Codefendants Linn and Adler met for approximately forty-five minutes. Linn departed Adler's hotel, his briefcase in hand. Linn was met by appellant, who was driving a pickup truck. Appellant drove Linn to his hotel. En route, appellant and Linn stopped to speak and to undertake activity (the precise nature of which was unclear at the time) in the truck's passenger compartment. Appellant dropped Linn at his hotel. Appellant stopped once more in Seattle, apparently to undertake activities inside his truck. Appellant proceeded south, then east from Seattle.

During the foregoing period, DEA agents identified the registered owner and driver of the pickup truck as Leo Klein, appellant, and learned from Canadian officers that Klein was suspected of narcotics trafficking, including previously transport-

---

**1.** At one of six banks visited, Linn purchased a $5,000 cashier's check; at another, he was refused a larger cashier's check.

ing narcotics from Spokane, Washington to Canada.

Appellant was kept under close surveillance. At Issaquah, a short distance from Seattle toward Spokane, the agents concluded that probable cause existed for appellant's arrest. The agents consulted a "supervisory special agent" by radio on the probable cause issue. Approximately fifteen miles further, the agents lost radio contact with their dispatch office.

Shortly thereafter, the agents stopped a truck which they erroneously believed to be appellant's. Upon discovering their error, the agents continued eastbound in an effort to relocate appellant, but did not regain sight of appellant's truck.

A short distance beyond Moses Lake, more than halfway from Seattle to Spokane, Washington State Patrol officers identified appellant's vehicle, stopped it, and arrested appellant. Appellant made statements independently known to be false.[2] Appellant's vehicle was impounded by the police and sniffed by a narcotics dog. The dog reacted positively. The vehicle was taken to a secure location. Early the next morning, December 10, appellant's truck was searched.[3] A package, wrapped in grey duct tape, was discovered in the vehicle. Unwrapped, the package revealed two one-kilogram "bricks" of cocaine.

After leaving his hotel on December 10, codefendant Linn was arrested, driving northbound. At that time, Linn's vehicle was searched. A roll of grey duct tape, which matched the tape surrounding cocaine found in Klein's truck, was discovered in Linn's vehicle.

Codefendant Adler was also arrested on December 10. Pursuant to a search warrant, $45,000 cash and two checks (drawn on Vancouver banks) were seized from Adler.

Laboratory analysis revealed that the cocaine seized from appellant's vehicle weighed 1,991 grams. This analysis also indicated that the cocaine was 92 percent pure. Fingerprints belonging to appellant and to codefendant Adler were found on the cocaine package. An address book seized from appellant contained the name Terry Germain.

Prior to trial, appellant moved to suppress evidence of the cocaine and to challenge the constitutionality of his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B). The district court denied these motions.[4]

Appellant was convicted of conspiracy to distribute cocaine, under 21 U.S.C. § 846 (Count I), and possession with intent to distribute cocaine in excess of five hundred grams, under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B) (Count IV). The court sentenced Klein to five years imprisonment on Count I and to five years on Count IV, to run concurrently. Appellant is not eligible for parole during the term of imprisonment on Count IV.

Appellant timely appeals. This court has jurisdiction under 28 U.S.C. § 1291.

## II

Two fourth amendment issues are raised. First, appellant claims that probable cause did not exist for his arrest. Second, appellant argues that a search warrant was required prior to a search of his vehicle and the package found therein.

## A

Appellant claims that DEA agents did not have probable cause for his arrest.

We review *de novo* a probable cause finding. *United States v. Arrellano–Rios*, 799 F.2d 520, 522 (9th Cir.1986). The dis-

---

**2.** Appellant stated that he had not been near the Sheraton Hotel in Seattle and that he had transported and discharged a hitchhiker en route to Moses Lake.

**3.** The district court upheld the search and unwrapping of the package without a separate warrant. From the record, it appears that a search warrant was, in fact, sought and ob-

tained, at 8:30 a.m. The warrant was challenged and the district court declined to consider the validity of the warrant.

**4.** The district court also held an evidentiary hearing on, and subsequently denied, similar motions by codefendant Linn.

trict court's findings of fact, however, will not be disturbed unless they are clearly erroneous. *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir.1986), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

The test for probable cause is whether "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *see also United States v. Smith*, 802 F.2d 1119, 1123 (9th Cir.1986); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Surveillance implicated appellant in criminal activity. Royal Canadian Mounted Police and DEA surveillance demonstrated that appellant was meeting with, speaking to, and transporting Linn immediately after Linn was believed to have completed a narcotics transaction. Appellant's subsequent activities strongly indicated that appellant was likely to be trafficking in narcotics. *Cf. United States v. Ginsberg*, 758 F.2d 823 (2d Cir.1985).

Probable cause was further strengthened by information from an informant. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), an informant alleged illegal narcotics activities, identified suspects, and described a pattern of narcotics trafficking between Florida and a second state. Although the informant was anonymous, leaving unproven his basis of knowledge and reliability, the Supreme Court upheld a probable cause finding on the ground that facts alleged by the informant were independently corroborated. Corroboration was considered part of "the totality of the circumstances," *id.* at 243–46, 103 S.Ct. at 2334–36, supporting probable cause.

Here, an informant's information was corroborated and provided strong support for probable cause.[5] Under "the totality of the circumstances," we conclude that probable cause existed to arrest appellant by the time he reached Issaquah. A warrant was not therefore required for appellant's arrest. *Gates v. Illinois*, 462 U.S. at 214, 103 S.Ct. at 2320.

### B

Appellant claims that the government was required to seek a warrant prior to searching his vehicle and "cutting open" the package found therein. The fourth amendment's search warrant requirement was intended to preserve freedom from unreasonable searches and seizures. This requirement, however, is subject to recognized exceptions, including the well-known "automobile exception."

Two principles underlie that exception. First, automobiles have historically been subject to "pervasive regulation", *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985); *see also Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (reduced privacy expectations in an automobile). Second, "[t]he mobility of automobiles ... 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is

---

5. First, the informant was not anonymous. He was well known, and information provided by this informant had led to previous convictions on narcotics trafficking charges.

Second, the informant's knowledge was specific. The informant identified the type of narcotics (cocaine), the quantity (one to two kilograms), the price ($100,000 Canadian), the origin (Miami), the origin of the cash (Vancouver), the city in which the transaction would occur (Seattle), the date of the transaction (December 9, 1986), the destination of the narcotics (Vancouver), the intended arrival date of the narcotics in Vancouver (December 11, 1986), and a participant in the transaction (Terry Germain). The informant also indicated that he had actually seen the $100,000 cash, strengthening his "basis of knowledge."

Third, much of the informant's information was independently corroborated by police surveillance prior to appellant's arrest.

Fourth, Canadian law enforcement officers had reason to believe that appellant had previously transported narcotics from Spokane to Seattle.

impossible.'" *Carney,* 471 U.S. at 391, 105 S.Ct. at 2069 (quoting *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)); *see also Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) ("[t]he opportunity to search is fleeting since a car is readily movable").

■ If probable cause exists for seizure of contraband, "an immediate intrusion is necessary" as a result of "the nature of an automobile in transit...." *United States v. Ross,* 456 U.S. 798, 806, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572 (1982). Appellant's automobile was suspected of carrying contraband and was in transit out of the jurisdiction. Under such circumstances, a warrantless search of appellant's vehicle was necessary. *Id.* at 806–07, 102 S.Ct. at 2163.[6]

■ The "cutting open" of a package found therein did not require an additional search warrant. In *Ross,* the Supreme Court determined that if probable cause existed to search a vehicle contemporaneously with arrest, "police were entitled to open containers discovered inside ... without first obtaining a warrant." *United States v. Johns,* 469 U.S. 478, 485, 105 S.Ct. 881, 885–86, 83 L.Ed.2d 890 (1985) (citing *Ross,* 456 U.S. at 817, 102 S.Ct. at 2168). The vehicle and container searches here were conducted shortly after appellant's vehicle was impounded. They fall squarely within the *Ross* exception.[7] *See also Cady v. Dombrowski,* 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (search of locked car trunk upheld); *Chambers,* 399 U.S. at 51, 90 S.Ct. at 1981 (search of sealed package in car trunk upheld); *Carroll,* 267 U.S. at 132, 45 S.Ct. at 280 (search

of interior of vehicle's upholstery upheld); *Johns,* 469 U.S. at 487, 105 S.Ct. at 886 (search of sealed packages inside covered pickup truck upheld).

Finally, no specific closed container believed to contain contraband was seen being placed inside appellant's automobile. By contrast, in *United States v. Salazar,* 805 F.2d 1394 (9th Cir.1986), a brown shopping bag, from which wrapped packages of cocaine were known to have been distributed, was observed being placed inside a car. In *Salazar,* we held that prior police knowledge of the specific, closed container required a separate search warrant following the vehicle stop. Facts in this case do not sufficiently parallel the facts of *Salazar* to warrant a similar conclusion.

The briefcase carried by Linn into appellant's vehicle was carried by Linn *out* of appellant's vehicle. How narcotics were packaged, in what container, or whether narcotics were in any "container" was unknown at the time of appellant's arrest. DEA agents did not know "prior to [the] search ... that a specific container [held] contraband." *Id.* at 1397. They had formed only a generalized belief that the car contained contraband. Such a belief does not require an additional warrant. *Id.*

### III

■ Appellant argues that he cannot be sentenced under 21 U.S.C. § 841(b)(1)(B) because the government did not prove he knew the quantity of cocaine in his possession. This claim has no merit since knowledge of quantity possessed is not an element of the crime. Title 21 U.S.C. § 841(a)(1) makes it a crime "knowingly or intentionally [to] ... possess with intent to

---

6. "[S]ince its earliest days Congress had recognized the impracticability of serving a warrant in cases involving the transportation of contraband goods." *Ross,* 456 U.S. at 806, 102 S.Ct. at 2163.

Appellant's reliance on *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (nonconsensual warrantless entry into a private residence requires warrant, absent exigency) and on *U.S. v. Alvarez,* 810 F.2d 879 (9th Cir.1987) (warrantless entry into hotel room, absent exigency, violates fourth amendment) is misplaced. Both cases necessarily involved higher privacy expectations, since the areas to be

searched were residential in nature. In addition, neither case involved the mobility of a vehicle. As we stated in *Alvarez,* "where exigent circumstances truly exist, we recognize that the usual Fourth Amendment protection must give way." 810 F.2d at 883.

7. "There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *Johns,* 469 U.S. at 484, 105 S.Ct. at 885; *see also Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (per curiam).

distribute ... a controlled substance." Title 21 U.S.C. § 841(b)(1)(B) penalizes "violation of subsection (a) of this section [21 U.S.C. § 841] involving ... 500 grams or more of a mixture or substance containing a detectable amount of ... cocaine...."

In *United States v. Normandeau*, 800 F.2d 953, 956 (9th Cir.1986), we considered the question whether knowledge was required for prosecution under the predecessor statute,[8] which involved enhanced penalties. We stated:

Appellant's argument presupposes that knowledge of the amount of marijuana involved is an element of the aggravated offense. We hold that it is not. [The relevant] section [21 U.S.C. § 841(b)(1)(B) ] ... is merely a penalty provision, and its provisions are wholly separate from the definition of unlawful acts included in 21 U.S.C. § 841(a). *United States v. Alvarez*, 735 F.2d 461, 467 (11th Cir.1984); *accord United States v. Wright*, 742 F.2d 1215, 1220 (9th Cir.1984).

*Normandeau*, 800 F.2d at 956. *See also United States v. Savinovich*, 845 F.2d 834, 839–40 (9th Cir.1988) (actual knowledge unnecessary if defendant "aware of high probability of possession"); *United States v. Collins*, 764 F.2d 647, 652 (9th Cir.1985) (possession of large quantities of narcotics supports knowledge). Accordingly, appellant need not know that he possessed a specific amount of cocaine to satisfy the statute's knowledge requirement.

Ample evidence supports the finding that appellant knew he possessed a controlled substance. He met codefendant Linn immediately after Linn and Adler had conducted a large cocaine transaction. He spoke to Linn and participated in physical activity within the truck while transporting Linn. Linn had met a party in Vancouver who expressly expected a shipment of cocaine. Canadian authorities suspected appellant of transporting narcotics from Spokane to Vancouver on a previous occasion; after meeting Linn, appellant proceeded in the direction of Spokane. Finally, appellant gave false statements to Washington state law enforcement officers at the time of his arrest.

Sufficient evidence exists to uphold the finding that appellant knew he possessed a controlled substance. Appellant need not have known that the package of cocaine he possessed weighed 1,991 grams or, in fact, that its weight exceeded 500 grams.

## IV

Appellant claims that his mandatory minimum sentence without parole, imposed under 21 U.S.C. § 841(b)(1)(B), is unconstitutional. He argues that the statute violates the eighth amendment, due process clause, equal protection clause, and the separation of powers doctrine.

## A

Appellant argues that a five-year mandatory minimum sentence without parole, imposed under 21 U.S.C. § 841(b)(1)(B), is disproportionate to the crime committed. He asserts that his sentence constitutes "cruel and unusual punishment."

As a general rule, "[i]t is for Congress to say what shall be a crime and how it shall be punished....", *United States v. Smith*, 686 F.2d 234, 239 (5th Cir.1982). "[A] sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual." *United States v. Washington*, 578 F.2d 256 (9th Cir.1978). Specifically, " 'for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.' " *United States v. Valenzuela*, 646 F.2d 352, 354 (9th Cir.1980) (quoting *Rummell v. Estelle*, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980)); *see also Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916) ("indisputable ... that the au-

**8.** Controlled Substances Act, 21 U.S.C. § 841(b)(6) (1970), repealed by Pub.L. 98–473, Title II, § 502(5); Narcotics Penalties and Enforcement Act of 1986, subtitle A, Amendments to § 841(b) (1986).

thority to define and fix the punishment for crimes is legislative"); *United States v. Jones*, 438 F.2d 461, 468 (7th Cir.1971) (same).

Mandatory minimum sentences without parole, under 21 U.S.C. § 841(b)(1)(B), have been subjected to a limited proportionality analysis. *See Savinovich*, 845 F.2d at 839–40; *United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir.), *cert. denied*, ___ U.S. ___, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988).

Our deeper analysis in this case follows the Supreme Court's direction in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).[9] In *Solem*, the Supreme Court held:

> [P]roportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3011.

In *Solem*, a defendant previously convicted of nonviolent felonies was sentenced to life imprisonment without parole for utter- ing a fraudulent one-hundred-dollar check. The Supreme Court concluded that the defendant's sentence was disproportionate to his crime and violated the eighth amendment.

We do not reach the same conclusion in this case.

### (1)

■ The first *Solem* factor involves gravity of the offense and harshness of the penalty. *Id.* Appellant argues that narcotics trafficking is a "non-violent offense," which should be treated as "less serious;" that his role was "the lowest possible role in the conspiracy;" and that he should not "suffer the grievous loss of the 'normal expectation' of parole." Neither Congress nor the courts has treated narcotics trafficking as a "less serious" offense or entitled offenders to the more lenient treatment often associated with "non-violent" crimes.

The mandatory minimum sentences in 21 U.S.C. § 841(b)(1)(B), enacted in 1986,[10] clearly reflect Congress' conclusion that possession of a sizable quantity of one of these "controlled substances" with intent to distribute is a *grave* offense.[11]

---

**9.** In *Savinovich*, we recently concluded that, "[a]lthough all the sentences imposed under § 841(b) must meet the mandatory minimum requirement, harsher sentences handed down for drug possession crimes have withstood eighth amendment scrutiny." 845 F.2d at 839–40.

**10.** The statute prescribes, in relevant part, that violation[s] ... involving ... 100 grams or more of a mixture or substance containing a detectable amount of heroin; 500 grams or more of a mixture or substance containing a detectable amount of ... cocaine; ... 5 grams of ... cocaine base; 10 grams of ... PCP ... or 100 grams or more of a mixture or substance containing a detectable amount ... of PCP; 1 gram or more of a mixture or substance containing a detectable amount of ... LSD ... or ... 100 grams or more of a mixture or substance containing a detectable amount of marihuana ... shall be sentenced to a term of imprisonment ... not less than 5 years and not more than 40 years[,] and if death or serious bodily injury results from the use of such substance[,] [the sentence] shall not be less than 20 years or more than life ... [and] [n]o person sentenced under this sub- paragraph shall be eligible for parole during the term of imprisonment imposed herein. 21 U.S.C. § 841(b)(1)(B). Other penalties are provided according to the type and quantity of the controlled substance "manufacture[d], ... distribute[d], ... dispense[d], or possess[ed]." 21 U.S.C. § 841(a); 21 U.S.C. § 841(b)(1)(A), (C), (D).

**11.** In hearings on these mandatory minimum sentences, then-Senate Majority Leader Byrd stated:

> [A major narcotics offender] must know that there will be no escape hatch through which he can avoid a term of years in the penitentiary. He must know in advance exactly how lengthy that prison term is going to be.... [T]he laws we pass will henceforth make it abundantly clear that a jail term must be imposed and must be served ... [the law intends] mandatory minimum penalties for the middle-level dealers as well ... [including] a minimum of five years for the first offense....

132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986). The bill's cosponsor, Senator DeConcini, stated

> [T]he penalties in this bill are severe. But I also believe that the penalties for drug dealers

Narcotics trafficking offenses are increasingly distinguishable from other non-violent crimes. As one court recently observed:

A life sentence for a crime of distributing heroin serves substantial state interests.... The [legislature] could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:

... The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse. Measured thus by the harm it inflicts on the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank.

*Terrebonne v. Blackburn,* 646 F.2d 997, 1002 (5th Cir.1981) (quoting *State v. Terrebonne,* 364 So.2d 1290, 1292 (La.1978)); *see also Terrebonne v. Butler,* 820 F.2d 156 (5th Cir.1987), *reh'g granted en banc,* 829 F.2d 1354 (5th Cir.1987); *United States v. Del Toro,* 426 F.2d 181 (5th Cir.1970) (mandatory five years without parole for first offense for heroin sale not cruel and unusual), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970).

In *Savinovich,* we held that, "[i]n light of the severity of the crime and drug-related problems of today's society, we find that the penalty is proportionate to the crime committed." 845 F.2d at 840.[12]

The fact that appellant may have had "the lowest possible role" in the narcotics conspiracy does not diminish the level of culpability which attended his own acts. The sentencing judge imposed the lowest permissible sentence.

While parole may have been a "normal expectation" for the defendant in *Solem,* 463 U.S. at 300, 103 S.Ct. at 3015, "parole is simply an act of executive grace." *Rummell v. Estelle,* 445 U.S. 263, 293, 100 S.Ct. 1133, 1149, 63 L.Ed.2d 382 (1980) (Powell, J., dissenting).[13] Trafficking in narcotics is a more serious offense than uttering a false check. Accordingly, any "normal expectation" of parole would likely be lower here than in *Solem.*

Moreover, any "normal expectation" of parole, or absence thereof, evolves from the judicial interpretation of congressional acts. One court, referring to enhanced penalties for narcotics trafficking, thus noted: "[L]egislative provision for a penalty is some indication that it does not offend 'the evolving standards of decency that mark the progress of a maturing society.'" *United States v. Kuck,* 573 F.2d 25, 27–28 (10th Cir.1978), quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). In short, expectations evolve and judicial interpretations of new congressional language is one important source of such evolution. Congress passed an act which *lowers* the normal expectation of parole. We are applying that congressional language to the facts in this case.

---

must be severe. If we are to take effective action to reduce drug trafficking, we must let drug dealers know that punishment will be severe, quick, and final. *Id.* at S14,270.

**12.** Reference to *In re Foss,* 10 Cal.3d 910, 519 P.2d 1073, 112 Cal.Rptr. 649 (1974), is also misplaced. This case involved the sale of a "single fix" of heroin on three of five occasions, sales which never involved an intent to "profit," and involved an intent to assist in stemming "pain and 'withdrawals.'" *Id.* 519 P.2d at 1077.

Appellant's reliance on *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) and *In re Grant,* 18 Cal.3d 1, 553 P.2d 590, 132 Cal.Rptr. 430 (1976), is misplaced. The former case overturned a statute on the ground that it punished narcotics addiction per se. *See Robinson,* 370 U.S. at 667, 82 S.Ct. at 1420. Possession with intent to distribute a large quantity of cocaine is, unlike the simple state of addiction, a culpable act. In *In re Grant,* a ten-year mandatory minimum sentence was imposed for possession of a small quantity of marijuana. Possession of greater than 500 grams of cocaine is a substantially more serious offense—for which appellant received a lesser penalty.

**13.** *See Greenholz v. Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) ("there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); *Morrissey v. Brewer,* 408 U.S. 471, 482 n. 8, 92 S.Ct. 2593, 2601 n. 8, 33 L.Ed.2d 484 (1972) (mere anticipation of parole does not warrant conditional release); *see also State v. Fain,* 94 Wash.2d 387, 617 P.2d 720, 724 (1980) (parole is an act of executive grace); *January v. Porter,* 75 Wash.2d 768, 774, 453 P.2d 876 (1969) (prisoner has no right to parole, which is privilege granted by administrative body).

Finally, "no-parole" provisions on mandatory minimum sentences have historically not offended the Constitution. *Schick v. Reed,* 419 U.S. 256, 267, 95 S.Ct. 379, 385, 42 L.Ed.2d 430 (1974). Even denial of parole on a life sentence need not violate the eighth amendment. *Valenzuela,* 646 F.2d at 354; *Moore v. Cowan,* 560 F.2d 1298, 1302–03 (6th Cir.1977), *cert. denied,* 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978); *United States v. Bergdoll,* 412 F.Supp. 1308, 1319 (D.Del.1976).

### (2)

The second *Solem* factor involves sentences imposed on other criminals in the same jurisdiction. 463 U.S. at 292, 103 S.Ct. at 3010.

Appellant states that "mandatory minimum sentences are rare in federal law," adding that "penalties for more serious crimes in the federal courts are uniformly less severe than the penalties under [this] statute...." While the former assertion is accurate, the latter is not.

A leading example is 21 U.S.C. § 848(a). The penalty for operating a "continuing criminal enterprise [under 21 U.S.C. § 848(a)] may not be less than 10 years and ... may be up to life imprisonment," while a repeat offender "shall be sentenced to ... not less than 20 years [under this statute]." Under 21 U.S.C. § 848(a), as under § 841(b)(1)(B), the courts have held that Congress intended the denial of parole. *See Valenzuela,* 646 F.2d at 354; *United States v. Erwin,* 793 F.2d 656 (5th Cir.), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986); *see also Savinovich,* 845 F.2d at 839–40 (mandatory minimum narcotics sentence without parole under § 841(b) "satisfies the second *Solem* criteri[on]").

Additionally, the imposition of sentences under § 848(a) has been upheld against eighth amendment challenge. *See Valenzuela,* 646 F.2d at 345 (heroin distribution conspiracy resulted in life sentence without parole); *cf. Erwin,* 793 F.2d at 668–69 (life sentence without parole); *United States v. Peters,* 791 F.2d 1270 (7th Cir.) (conspiracy to possess and distribute cocaine resulted in twelve years), *cert. denied sub nom. Odoner v. United States,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). Likewise, imposition of a mandatory minimum sentences without parole under § 841(b) has also been upheld against eighth amendment challenge. *See Savinovich,* 845 F.2d at 840; *Holmes,* 838 F.2d at 1178.

Other federal criminal statutes impose a mandatory life sentence for the most severe grade of the offense. *See* 18 U.S.C. § 1201(a) (kidnapping), 18 U.S.C. § 1111(b) (murder), 18 U.S.C. § 1651 (piracy under law of nations), 18 U.S.C. § 34 (destruction of aircraft and motor vehicles resulting in death), and 18 U.S.C. § 1203 (hostage taking).[14]

Finally, we note that the only other circuit to consider this question has concluded: [T]he mandatory minimum sentences found in [21 U.S.C. § 841(b)(1)(B)] ... cannot be said to be excessive in relation to the sentences for other severe federal crimes." *Holmes,* 838 F.2d at 1178. We agree.

### (3)

The third *Solem* factor involves "sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292, 103 S.Ct. at 3011. Appellant argues that his crime would have been less severely punished in other jurisdictions. Since many states have mandatory minimum sentences similar to 21 U.S.C. § 841(b)(1)(B)[15] and these statutes have been upheld against constitutional challenges,[16] this fed-

---

**14.** Also, Washington State imposes mandatory minimum sentences for certain crimes. *See, e.g., Fain,* 617 P.2d at 726 (mandatory minimum sentence of life, imposed after three convictions for fraud, does not violate eighth amendment proscription of cruel and unusual punishment).

**15.** Florida and Georgia, for example, have similar mandatory minimum sentences for narcot-

ics trafficking. *See Fla.Stat.Ann.* § 893.135 (1979); Ga.Code § 16–13–31 (1981).

**16.** See *State v. Benitez,* 395 So.2d 514 (Fla.1981); *Brugman v. State,* 255 Ga. 407, 339 S.E.2d 244 (1986); *see also Tyler v. Gunter,* 819 F.2d 869 (8th Cir.1987) (five-year sentence for possession of one-eighth gram of hashish not cruel and unusual); *Terrebonne,* 646 F.2d at 998 (life im-

eral statute's penalties are not excessive relative to state penalties for the same crime.

On this question, the Eleventh Circuit observed:

> Section 841(b) is not the only legislative enactment imposing long or mandatory sentences for the distribution of narcotics. Other jurisdictions have such laws ... Thus, we believe that Section 841(b) satisfies the criteria delineated in *Solem;* and ... [appellant's] sentence is proportionate to the serious crime he committed [i.e. possession of cocaine with intent to distribute].

*Holmes,* 838 F.2d at 1179; *see also Savinovich,* 845 F.2d at 840. In sum, application of the *Solem* factors to this case compels the conclusion that appellant's sentence does not violate the eighth amendment.

### B

■ Appellant claims that 21 U.S.C. § 841(b)(1)(B) violates the separation of powers doctrine by usurping judicial sentencing discretion (via mandatory minimum sentences without parole) and by delegating judicial power to the Executive.

The separation of powers doctrine is implied in the Constitution. The doctrine's purpose is to guarantee independence to each of the three departments of our federal government. The guarantee of "coequality" and "[freedom from] coercive influence[s]" is "fundamental." *Bowsher v. Synar,* 478 U.S. 714, 725, 106 S.Ct. 3181, 3188, 92 L.Ed.2d 583 (1986) (quoting *Humphrey's Executor v. United States,* 295 U.S. 602, 629–30, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935)); *see also Monaco v. Mississippi,* 292 U.S. 313, 323, 54 S.Ct. 745, 748, 78 L.Ed. 1282 (1934). However, "[i]n our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans,* 333 U.S. 483, 486,

68 S.Ct. 634, 636, 92 L.Ed. 823 (1948) (footnote omitted); *see also Rummell,* 445 U.S. at 263, 100 S.Ct. at 1133; *Ex Parte United States,* 242 U.S. at 42, 37 S.Ct. at 74; *Smith,* 686 F.2d at 239; *Washington,* 578 F.2d at 256; *United States v. Jones,* 438 F.2d 461, 468 (7th Cir.1974).

Under 21 U.S.C. § 841(b)(1)(B), which prescribes mandatory minimum sentences without parole, discretion remains in the courts to determine whether a defendant shall be sentenced to a term of between five and forty years on that offense for which appellant was convicted. Thus, discretion is permitted beyond the mandatory minimum. We have upheld federal statutes which provide for less sentencing discretion than does this statute. *See, e.g., Valenzuela,* 646 F.2d at 354 (upholding a life sentence without parole where statute sets mandatory minimum penalty between twenty years and life); *see also Erwin,* 793 F.2d at 656 (upholding life without parole).

In *Jones,* the Seventh Circuit considered whether a five-year mandatory minimum sentence for unlawful sale of cocaine "constitute[d] an invalid encroachment on judicial authority constitutionally vested in the courts [under the separation of powers doctrine]." 438 F.2d at 467. Likewise, the court considered whether a resulting grant of discretion to the prosecutor, permitting him to choose between a statute with a mandatory sentence and one without, violated the separation of powers doctrine. *Id.* Both questions are presented here. In *Jones,* the court concluded:

> [B]oth contentions [are] wholly devoid of merit. The judicial power vested by the Constitution in the courts includes the right to impose the punishment provided by law for the offense involved, but it is 'indisputable ... that the authority to define and fix the punishment for crime is legislative,' not judicial in nature.

prisonment in Louisiana for selling small quantity of heroin not cruel and unusual); *Salazar v. Estelle,* 547 F.2d 1226 (5th Cir.1977) (upholding Texas' 45–year term for distribution of small quantity of heroin); *Shy v. State,* 459 A.2d 123, 125 (Del.Super.Ct.1983) (10–year mandatory minimum sentence does not violate eighth

amendment for 22 grams of substance containing cocaine); *People v. Campbell,* 115 Mich.App. 369, 320 N.W.2d 381 (1982) (mandatory minimum sentence of 10 years, plus life on probation, for 50–225 grams of cocaine mixture not an eighth amendment violation).

*Id.* at 468 (quoting *Ex Parte United States,* 242 U.S. at 42, 37 S.Ct. at 74); *see also United States v. Lewis,* 300 F.Supp. 1171 (E.D.Pa.1969) (prosecutor's choice between statutes with and without minimum mandatory sentences did not violate separation of powers); *DeAngelis v. United States,* 345 F.Supp. 9, 11 n. 3 (E.D.Pa.1972) (statutes with minimum mandatory sentence upheld; collected cases).

As with other federal crimes containing mandatory minimum sentences, the district court is permitted to vary the sentence imposed after considering mitigating and aggravating circumstances, limited only by an expressly prescribed and proportionate minimum sentence. As the Eleventh Circuit observed in *Holmes,* after examining 21 U.S.C. § 841(b)(1)(B):

> [Appellant's] argument that the mandatory minimum sentence requirements violate the separation of powers doctrine is without force. 'It is for Congress to say what shall be a crime and how that crime shall be punished....'

*Holmes,* 838 F.2d at 1178 (quoting *United States v. Smith,* 686 F.2d 234, 239 (5th Cir.1982)). This conclusion is equally applicable here.

### C

Appellant argues that his due process and equal protection rights were violated. Specifically, he argues that the sentencing system articulated in 21 U.S.C. § 841(b)(1)(B) is "irrational," and "unreasonable," since it "fail[s] to classify according to the quality or purity of the narcotic," and does not allow for "individualized sentencing."

### (1)

■ Appellant asserts that penalties based solely on quantity of narcotic possessed, omitting purity, offend due process and equal protection. Title 21 U.S.C. § 841(a) states: "it shall be unlawful for any person to knowingly or intentionally ... possess with intent to distribute ... a controlled substance...." Title 21 U.S.C. § 841(b)(1)(B) states *inter alia* that:

> [A]ny person who violates subsection (a) of this section shall be sentenced as follows: [I]n case of a violation ... involving (ii) 500 grams or more of a mixture or substance containing a *detectable amount* of—(II) cocaine ... [or] (iii) 5 grams or more of a mixture or substance ... which contains cocaine base ... such person shall be sentenced to a term of imprisonment ... not less than 5 years and more than 40 years ... [without] parole.

(Emphasis added).

While the statute does not define the terms "detectable amount," "cocaine," or "cocaine base," the nature of the "substance" here is not in dispute. Appellant possessed 1,992 grams of a substance which was 92 percent pure cocaine. He was sentenced for possession of cocaine in excess of 500 grams. Since appellant possessed 1,992 grams of 92 percent pure cocaine (equivalent to 1,832 grams of 100 percent pure cocaine), any consideration of purity would not favorably affect appellant's sentence.

In any event, the classification system chosen by Congress is not arbitrary.[17] As we said in *Normandeau,* in considering the same issue under the predecessor statute, "[t]hrough their involvement in the illegal transaction, defendants assumed the risk of enhanced penalties if the government could show that their offense involved more than [the specified quantity of narcotics]...." 800 F.2d at 956.

Congress clearly intended to base such mandatory minimum sentences on *quantity.* Since a suspect classification is not implicated, we only need to identify a rational basis for this congressional decision. *See United States v. Richards,* 737 F.2d

---

**17.** Appellant refers to *United States v. Tebha,* 770 F.2d 1454 n. 2 (9th Cir.1985), decided prior to the 1986 amendments. The following sentence is omitted from appellant's quotation: "It may be that possession of a large enough quantity of drugs by itself would be sufficient to support an inference of intent to distribute." Obviously, evidence of purity may be introduced at trial to rebut the government's evidence of intent to distribute. The *Tebha* footnote has no obvious bearing on the relationship between purity and sentencing.

1307, 1310 (4th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985); *Clayborne v. Califano,* 603 F.2d 372 (2d Cir.1979); *see also Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934) (due process is satisfied if means Congress selected bears some reasonable relation to a "proper legislative purpose" and is "neither arbitrary nor discriminatory").

Explaining the sentence enhancement provisions of the predecessor statute, we have concluded, "Congress simply wanted [under § 841(b)] to deal more severely with large-volume ... [narcotics] dealers." *Normandeau,* 800 F.2d at 953; *see also Savinovich,* 845 F.2d at 839–40. That conclusion remains entirely applicable here. Congress' objective is rationally related to the means chosen. Large-volume dealers, regardless of purity of narcotic, pose a substantial danger to society.[18]

As we concluded in *Savinovich,* 845 F.2d at 840, and as the Eleventh Circuit concluded in *Holmes,* 838 F.2d at 1178, Congress' judgment in premising mandatory minimum sentences on "detectable amounts" of controlled substances was rational. Omission of purity considerations does not violate due process or equal protection guarantees. *Savinovich,* 845 F.2d at 840.

### (2)

Appellant claims that 21 U.S.C. § 841(b)(1)(B) does not permit individualized sentencing. Sentencing under this statute is individualized according to quantity and variety of the narcotic possessed. Sentences are further individualized by judicial discretion beyond the mandatory minimum. By comparison, significantly less attention has been given to gradation and judicial discretion in statutes such as 21 U.S.C. § 848(a), yet that statute has consistently been upheld against constitutional challenges. *See, e.g., Valenzuela,* 646 F.2d at 354; *Erwin,* 793 F.2d at 656; *Peters,* 791 F.2d at 1303–05.

18. Large-volume dealers possess the potential for distribution to a larger number of persons than do small-volume dealers. In addition, they

### V

We conclude that the district court's finding of probable cause to arrest appellant is not clearly erroneous. In view of the automobile exception to the warrant requirement, we conclude that a warrant for the search of appellant's vehicle and the package therein was unnecessary. Knowledge of the quantity of cocaine possessed is not an element of 21 U.S.C. § 841(a) or § 841(b)(1)(B). We hold that appellant's five-year mandatory minimum sentence without parole under 21 U.S.C. § 841(b)(1)(B) is neither "cruel and unusual" nor disproportionate to the crime committed. It does not violate the eighth amendment. Similarly, we hold that 21 U.S.C. § 841(b)(1)(B) does not offend the doctrine of separation of powers, by usurping judicial prerogatives or delegating new authority to the Executive. Finally, we hold that the due process and equal protection clauses are not violated, either by Congress' decision to grade mandatory minimum sentences by quantity or for any failure to individualize appellant's sentence.

AFFIRMED.

are more likely to be organizers, actively cultivating markets and sources for an illegal narcotic.