**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael POWER, Defendant–Appellant.**

**No. 88–5052.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1989.
Decided Aug. 3, 1989.

Mary F. Gibbons, Los Angeles, Cal., for defendant-appellant.

Ellyn M. Lindsay, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, REINHARDT and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant, Michael Power, appeals his convictions for conspiracy to possess with intent to distribute narcotics (21 U.S.C. § 846), for possession with intent to distribute narcotics (21 U.S.C. §§ 846, 841(a)(1)), for aiding and abetting the violation of section 841(a)(1) (18 U.S.C. § 2(a)), and for carrying a firearm during and in relation to a narcotics offense (18 U.S.C. § 924(c)). Power was sentenced 10 years in prison followed by a five year term of supervised release for violating § 846 and § 2(a), and a

consecutive five year term for violating § 924(c).

On appeal, Power contends that the district court improperly instructed the jury as to the firearm charge, that there was insufficient evidence to convict him of the conspiracy charge or the firearm charge, that the district court erred in giving him the mandatory minimum sentence under 21 U.S.C. § 841(a)(1) as he was convicted only of aiding and abetting, and finally that the government's exercise of a peremptory challenge does not withstand a *Batson* inquiry. We review each of these contentions in turn, and affirm.

*Factual Background*

In September 1987, a police informant, Miller, and an officer of the Santa Monica Police Department, Henry, contacted Power's codefendant, Brown. Brown had previously sold them narcotics, most recently in May of that year. On September 9, 1987, the parties agreed that Brown and his girlfriend, "Dee Dee," would sell Investigator Henry five kilograms of cocaine for $105,000. Dee Dee would meet investigator Henry and Miller, would view the money and would contact Brown to complete the deal.

Miller, Investigator Henry and Special Agent Hill of the Drug Enforcement Administration drove to the location. Dee Dee arrived and after viewing the money telephoned Brown from the undercover police car. Dee Dee left the location to pick up Brown.

Approximately one hour later, Brown and appellant Power arrived at the location. Brown sat in the back seat of the undercover police car. Brown stated that the five kilograms of cocaine was at a park and suggested everyone drive to that location.

Brown and Investigator Henry walked through the park in an unsuccessful attempt to locate the persons bringing the cocaine; appellant Power walked closely behind them. Brown and Power then went to make a telephone call to try and locate the cocaine. They returned and said that the cocaine was en route. Brown made several phone calls from the undercover police car; Brown told Investigator Henry

he was going to find the people with the cocaine. Appellant Power stated "like man, I know they have the stuff. I seen it. I don't know what is taking them so long. They do deals like this all the time." Brown and Power left the park and were arrested.

A. *Jury Instruction 18 U.S.C. § 924(c)*

■ Power argues that the district court erred in instructing the jury as to the separate elements of 18 U.S.C. § 924(c), carrying a firearm during and in relation to a narcotics offense. The district court instructed the jury that:

> Two essential elements must be proven beyond a reasonable doubt in order to establish the offense charged in count five:
>
> First: That the defendant carried a firearm, and
>
> Second: That he did so during and in relation to a federal drug trafficking crime, as charged.

Section 924(c) provides:

> Whoever, during and in relation to any … drug trafficking crime, … uses or carries a firearm, shall, in addition to drug trafficking crime, be sentenced to imprisonment for five years.

According to the appellant, the court's instruction regarding the elements of section 924(c) failed to differentiate between carrying a firearm during the commission of a crime as distinct from carrying it in relation to the felony. Relying on *United States v. Stewart, (Stewart)*, 779 F.2d 538 (9th Cir.1985), *cert. denied,* — U.S. —, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987), appellant contends that his conviction under section 924(c) must be reversed given the absence of evidence showing that the firearm bore a relation to the crime. This argument is without merit.

"Since this objection was not raised at trial, we review the jury instruction for plain error." *United States v. Ramos, (Ramos)*, 861 F.2d 228, 230 (9th Cir.1988). "Plain error is 'highly prejudicial error affecting substantial rights.' " *Id.* (quoting *United States v. Harris,* 738 F.2d 1068,

1072 (9th Cir.1984)) ("[t]here must be a high probability that error materially affected the verdict") (internal citation omitted).

In *Ramos,* as in this case, the district court correctly stated the elements of the firearm charge (section 924(c)) and did not define the phrase "in relation to." In *Ramos,* we held that the district court's failure to define the phrase was not plain error. "The 'in relation to' language connotes a causal connection between appellant's narcotics felonies and this firearm." *Id.* at 230. The government in *Ramos* provided sufficient testimony linking the firearm to the underlying narcotics felony. *Id.* at 231 (defendant carried and brandished firearm en route to the drug transaction). Accordingly, the court in *Ramos* concluded that the verdict was not materially affected by the omission of some further explanation of the term "in relation to."

In this case, the district court properly stated the elements of section 924(c) but did not provide any further explanatory instruction regarding the phrase "in relation to". The government's theory at trial was that appellant acted as "muscle" or protection for codefendant Brown during the drug deals. In support of this theory the government presented the following evidence:

The appellant was present and remained close to Brown throughout the narcotics deal. When Brown entered the undercover police car to negotiate with Investigator Henry, the appellant was in a nearby car. When Brown went to make telephone calls, Power went with him. When Brown and Investigator Henry walked through the park, the appellant walked behind them. The appellant was arrested in possession of a loaded handgun. Investigator Henry testified that those dealing in narcotics often have weapons to protect themselves from having their drugs stolen.

At closing argument, the government argued that in order to find Power guilty, the jury must find his carrying of the handgun was "in relation to" the drug deal, and that it could do so based on Power's role as "muscle." Counsel for the appellant argued that the jury should find Power not guilty because the gun was unrelated to the drug deal.

Unlike *Ramos,* in this case the handgun was not brandished during the narcotics deal; nevertheless, the government provided sufficient evidence linking the firearm to the underlying felonies. "Because guns are used in many drug transactions, 'it may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use.'" *United States v. Savinovich,* 845 F.2d 834, 837 (9th Cir.1988). *See also Stewart,* 779 F.2d at 539 ("Given the use of firearms in some drug transactions ... and the known risks of conducting an illegal drug business, the jury could infer from all of the evidence that ... possession of [a handgun] ... was intended to facilitate the drug operations or secure ... contraband.") (citations omitted).

Contrary to the appellant's contention, *Stewart* is not dispositive of this case. In *Stewart,* the court reversed Stewart's conviction for carrying a firearm during the commission of a felony because "[t]he government ... did not attempt to link possession of the firearm with the underlying felony, and the district judge did not instruct the jury that a relation between the two is required." *Id.* Here, the district court properly stated the elements of the crime. "Distinguishing *Stewart,* the government here provides sufficient testimony linking the firearm to the underlying narcotics felonies." *Ramos,* 861 F.2d at 231.

We cannot conclude that there is "a high probability" that appellant would have been found not guilty if the "in relation to" phrase had been defined or further explained. We conclude the verdict was not materially affected by this omission; there was no plain error. *Id.*

### B. *Sufficiency of the Evidence*

In determining the sufficiency of the evidence on appeal, the standard of review is whether, in viewing the evidence in the light most favorable to the government, any rational trier of fact could have found

the essential elements of the crime charged beyond a reasonable doubt. *United States v. Murray*, 751 F.2d 1528, 1534 (9th Cir.), *cert. denied*, 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 335 (1985).

### 1. *18 U.S.C. § 924(c) (1982)*

■ Appellant contends that the evidence was insufficient to convict him under section 924(c) because he never displayed or used his weapon during the commission of the underlying felony.

■ The appellant, however, need not display or brandish a firearm to be convicted under section 924(c). *Stewart*, 779 F.2d at 540. "If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, *whether or not such display or discharge in fact occurred*, then there is a violation of the statute." *Id.* (emphasis added). Under the theory presented by the government, Power, who was acting as "muscle," was carrying the firearm to protect Brown and to prevent someone from stealing the narcotics. Viewing this evidence in the light most favorable to the government, a trier of fact could have found beyond a reasonable doubt that Power carried a firearm during and in relation to the federal drug trafficking crimes.

### 2. *21 U.S.C. § 846 (1982)*

■ Appellant contends that the evidence was insufficient to support his conviction for conspiracy to possess with intent to distribute cocaine.

"The evidence that [Power] conspired to possess cocaine with intent to distribute is sufficient, if viewing the evidence in the light most favorable to the government, any rational trier of fact could have found beyond a reasonable doubt of the elements of the crime." *United States v. Guzman*, 849 F.2d 447 (9th Cir.1988) (internal citation omitted).

The evidence showed that Power carried a handgun and was present at the April 16, 1987 meeting in which Brown sold Miller and Investigator Henry rock cocaine. Power was also present during the September 9, 1987 transaction. During this deal, Power drove Brown to the first location. After Brown talked to Investigator Henry, Power drove Brown to a different location—the park. Brown and Investigator Henry walked through the park to locate the narcotics. Power accompanied them, walking close behind Brown. Unable to locate the cocaine, Brown and Power drove away to make some telephone calls and then returned to the park. Upon returning, Brown entered the undercover vehicle while Power stood close by. After Brown made several phone calls attempting to locate the cocaine, Power stated, "Like, man, I know they have the stuff. I seen it. I don't know what is taking them so long." Brown and Power left the scene to search for the narcotics; they were arrested as they left the park. At trial, Investigator Henry testified that narcotic dealers often bring persons who act as protection to narcotic buys—to assure that their money and their narcotics are not stolen. *See, e.g., Ramos*, 861 F.2d at 231 n. 3 (citing cases for support "that trafficking in narcotics is very often related to the carrying and use of firearms").

From the above evidence, a rational trier of fact could conclude that Power conspired with Brown and others to possess cocaine with the intent to distribute. "Where the evidence establishes that a conspiracy exists, only a slight connection to the conspiracy is necessary to convict a defendant of knowing participation in it." *United States v. Penagos, (Penagos)*, 823 F.2d 346, 348 (9th Cir.1987) (internal citation omitted). A jury could easily infer from the evidence that Power was acting as protection or "muscle" for Brown. Further, Power's statement indicates that he knew a drug deal was taking place.

*Penagos, United States v. Lopez, (Lopez)*, 625 F.2d 889 (9th Cir.1980), and *United States v. Cloughessy*, 572 F.2d 190 (9th

Cir.1977), ( *Cloughessy*), upon which the appellant heavily relies, do not require a different conclusion.

In *Penagos*, this court found that the evidence presented at trial did not show that the defendant acted as a lookout or committed any act in furtherance of the conspiracy. According to the court, Penagos' alleged lookout activities did not occur during the meetings between buyers and sellers or during the transfer of drugs to buyers. Penagos was present only on one of three occasions where narcotics were transported. The evidence showed that Penagos' behavior was not consistent with that of a "lookout." *Penagos*, 823 F.2d at 349.

In *Cloughessy*, no direct evidence of defendant's participation in the conspiracy was introduced. Furthermore, the codefendants testified that Cloughessy was not a party to the conspiracy. The government's evidence was enough to demonstrate that Cloughessy knew something was going on but was insufficient to prove knowledge or participation in the conspiracy. *Cloughessy*, 572 F.2d at 191.

Finally, in *Lopez*, the defendant "1) spent the day with major drug conspirators, 2) walked around the perimeter of the conspirators' house after someone looked out of a window once and out the front door twice, 3) accompanied conspirators to the scene of a drug transaction, and, 4) told arresting officer that he 'knew what was going down,' and that, but for a leg injury, he would never have been caught." *Penagos*, 823 F.2d at 350. Nonetheless, this court found that the evidence was insufficient to show Lopez's knowing participation in the heroin conspiracy. In reaching this result, this court noted that (1) the evidence offered by the defense established that Lopez was not a member of the conspiracy, but an innocent bystander; (2) the codefendants testified that Lopez was not a member of the conspiracy; and (3) Lopez's statement, "I knew what was going down," without any explanatory evidence, was not an admission of knowledge of the heroin transaction. *Lopez*, 625 F.2d at 895.

In this case, Power was present "at times and places where the risk of detection and capture is greatest, i.e. at meetings between buyers and sellers." *Penagos*, 823 F.2d at 349. Power's statement was not ambiguous and shows that Power knew about the cocaine deal. The evidence also establishes that Power was acting as protection for Brown. None of the codefendants testified that Power was not a member of the conspiracy.

"It is sufficient if the acts and conduct of a defendant were of such character that the minds of reasonable men could conclude therefrom that an unlawful agreement or understanding existed, and that the defendant, with knowledge of the existence of the unlawful enterprise, acted to further it." *United States v. Perez*, 491 F.2d 167, 171 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). Viewing the evidence in a light favorable to the government, there was sufficient evidence to sustain Power's conviction.

### C. Mandatory Minimum Sentence Under 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1)

Appellant contends that his mandatory minimum sentence of ten years for violating 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) cannot stand because he was convicted only of aiding and abetting the violation of section 841(a)(1).

We review questions of law de novo. *United States v. McConney*, 728 F.2d 1195 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (en banc). In *United States v. Ambrose*, the Seventh Circuit held that a defendant convicted of aiding and abetting a violation of 21 U.S.C. § 848 may be subjected to the mandatory minimum penalties of that statute, but, alternatively may be subjected to a less severe sentence. 740 F.2d 505, 507–10 (7th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). The appellant argues that the same rationale should apply to aiders and abettors of 21 U.S.C. § 841(a)(1); that is that the district judge is not required to impose the mandatory minimum sentence under section

841(a)(1) for a conviction as an aider and abettor of the offense.

■ To convict a defendant under 21 U.S.C. § 848, the government must prove that the person engaged in a continuing series of narcotics violations, supervised at least five other persons, and derived substantial income from his activities. Section 848 was "designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett v. United States*, 471 U.S. 773, 781, 105 S.Ct. 2407, 2412–13, 85 L.Ed.2d 764 (1985). Thus, Congress "assign[ed] guilt to only one type of participant in a transaction," leaving others unpunished for the offense. *United States v. Amen*, 831 F.2d 373, 381 (2nd Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988) (holding that because section 848 targets ringleaders of large scale narcotics operations, a person cannot be convicted of aiding and abetting the violation of section 848).

■ Relying on legislative history, the appellant characterizes section 841(a)(1) as another kingpin statute similar to section 848, and thus, under the reasoning of *Ambrose*, the mandatory minimum sentence is not applicable to an aider and abettor of a section 841(a)(1) violation. We disagree.

The "emphasis on quantity as the key factor triggering the statute's mandatory sentencing provision was adopted by Congress in the language of § 841(b). In that provision, Congress decided to mandate minimum prison terms without parole based on the quantity of drugs involved in the § 841(a) conviction." *United States v. Martinez–Zayas*, 857 F.2d 122, 130 (3rd Cir.1988) (Congress directed the sentencing court to impose mandatory minimum prison terms based on the quantity of drugs); *United States v. Klein*, 860 F.2d 1489, 1496 (9th Cir.1988) (even if the accused had the "lowest possible role" in the narcotics conspiracy, "the mandatory minimum sentences in 21 U.S.C. § 841(b) ... clearly reflect Congress' conclusion that possession of a sizable quantity of one of the 'controlled substances' with intent to distribute is a grave offense.") Accordingly, section 841(a)(1) is not to be treated as a section 848 "kingpin" statute which is specifically directed at persons engaged in a continuing series of narcotics violations, who supervised at least five persons, and derived substantial income from the activities. 21 U.S.C. § 848(b)(2). Rather, section 841(a)(1) reaches anyone who is trafficking in certain quantities of narcotics—including mid-level dealers. *Klein*, 860 F.2d at 1496 n. 11. Congress did not provide an exception to the mandatory sentence where the defendant's actions were limited to aiding and abetting; instead, it chose to make drug quantity the "controlling indicator on whether mandatory penalties should apply." *See Martinez–Zayas*, 857 F.2d at 131–32. Accordingly, we conclude that an aider and abettor of section 841(a)(1) is subject to that statute's mandatory minimum penalties.

### D. *Batson error*

■ Finally, Power argues that the government violated his rights under the Fourteenth Amendment's equal protection clause when it used peremptory challenges to eliminate one of two potential black jurors from the venire. The district court's findings regarding purposeful discrimination in the jury selection process are findings of fact which will be set aside only if clearly erroneous. *See United States v. Lewis*, 837 F.2d 415, 417 (9th Cir.1988) (*Lewis* ); *Batson v. Kentucky*, 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986) (*Batson* ).

■ In reviewing Power's claim of improper use of peremptory challenges by the prosecution, we employ the two-stage analysis set forth in *Batson*. *United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir.1987) (*Thompson* ). Under this analysis, Power must first make out a prima facie case of purposeful discrimination in the jury selection process by showing: that he is a member of a cognizable racial group; that the prosecutor "exercised peremptory challenges to remove from the venire members of [his] race"; and that the circumstances of jury selection "raise an inference that the prosecutor used [the challenges] to exclude the veniremen from

the petit jury on account of their race." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. *See also Lewis*, 837 F.2d at 416–417. If the prima facie case of discrimination is established, the burden shifts to the government to articulate a "neutral explanation" for its challenges, an explanation "related to the particular case tried." *United States v. Chinchilla*, 874 F.2d 695, 697 (9th Cir. 1989), *Batson* 476 U.S. at 98, 106 S.Ct. at 1723.

■ In this case, we need not decide whether Power established a prima facie case under *Batson*. Even if we were to assume that he did, his claim fails, for the government expressed a neutral, reasonable basis for its use of a peremptory challenge against one of the two black jurors. The government stated that it challenged the juror because the juror had recently completed service on another jury and was fidgeting and looking around as he sat in the jury box. This behavior made the prosecutor believe that the individual would not be an attentive juror. Further, the prosecutor stated that she feared the juror might be hostile to the government for calling him to serve again so soon after his service as a juror in a long prior trial.

■ We cannot say that the district judge, who had the opportunity to observe the full jury selection process first-hand, clearly erred in finding that, in this case, the justifications the prosecutor offered were adequate under *Batson*. The prosecution's explanations of its use of peremptory challenges need not rise to the level justifying use of a challenge for cause. *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723; *Chinchilla*, at 697. Moreover, we have previously held that "[e]xcluding jurors because of ... a poor attitude in answer to voir dire questions is wholly within the prosecutor's prerogative." *Thompson*, 827 F.2d at 1260. The fact that a prosecutor's reasons may be "founded on nothing more than a trial lawyer's instincts about a prospective juror," *Id.*, does not diminish the scope of acceptable invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions. *See Chinchilla*, at 699.

The prosecutor provided the trial court with a reasonable, neutral basis for challenging the juror and provided reasons for her actions sufficient to carry her *Batson* burden. The district court did not find these reasons pretextual. Accordingly, we will not disturb the district court's conclusion that no *Batson* error occurred in Power's case.

AFFIRMED.