**DARYL ALBERT BEAUPIERRE, JR., Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2009-0005

Supreme Court of the Virgin Islands

August 10, 2011

624

626

SAMUEL H. HALL, JR., ESQ., Hall & Griffith, P.C., St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, V.I. Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(August 10, 2011)

CABRET, J. Daryl Beaupierre appeals a ten year mandatory minimum sentence based on a conviction following a bench trial of rape in the first degree. *People v. Beaupierre*, No. ST-07-CR-0000352 (V.I. Super. Ct. Dec. 17, 2008). Beaupierre presents three arguments in support of his claim that mandatory minimum sentences are unconstitutional: (1) mandatory minimum sentences violate due process, (2) mandatory minimum sentences are cruel and unusual punishments, and (3) mandatory minimum sentences violate the doctrine of separation of powers and impermissibly threaten the independence of the judicial branch. Beaupierre also requests, alternatively, if this Court does not find that mandatory minimum sentences are unconstitutional, that all

628

mandatory minimum sentences be subject to an "unreasonableness" review like the review of federal sentences since *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). For the reasons that follow, we affirm Beaupierre's sentence.

## I. FACTS AND PROCEDURAL HISTORY

This appeal stems from Beaupierre's assault on his ex-girlfriend that began on September 3, 2007 and lasted into the morning of September 4, 2007. The trial court found that Beaupierre imprisoned his ex-girlfriend for the better part of the night, raped and sodomized her, punched and choked her while in possession of a knife, and finally cut her during the attack. Beaupierre was found guilty of one count of false imprisonment-domestic violence, V.I. CODE ANN. tit. 14, § 1051 and tit. 16, § 91(b)(12); one count of rape in the first degree, 14 V.I.C. § 1701(2) and 16 V.I.C. § 91(b)(6); two counts of unlawful sexual contact in the first degree, 14 V.I.C. § 1708(1) and 16 V.I.C. § 91(b)(5); four counts of assault in the first degree, 14 V.I.C. §295(3) and 16 V.I.C. § 91(b)(1), (2); and two counts of carrying or using dangerous weapons, 14 V.I.C. § 2251(a)(2)(B).

On December 17, 2008, the trial court sentenced Beaupierre to seventeen and one-half years on the rape charge. The judge also ordered a ten year mandatory minimum sentence to be served before parole becomes available as required by 14 V.I.C. § 1701 for rape in the first degree. The defendant did not object to the mandatory minimum sentence at the November 25, 2008 sentencing hearing. The Superior Court entered its Judgment and Commitment on December 31, 2008. Beaupierre timely filed his notice of appeal.

On appeal, Beaupierre argues that (1) his mandatory minimum sentence is a legislative infringement on his due process right to individualized sentencing from the trial court's discretion, (2) the mandatory minimum sentence is a cruel and unusual punishment, (3) mandatory minimum sentences violate the doctrine of separation of powers and impermissibly threaten the independence of the judicial branch and, in the alternative, (4) this Court should establish a "reasonableness" review of all criminal sentences in line with *United States v. Booker*, 543 U.S. 220, 260-61, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

## II. JURISDICTION AND STANDARDS OF REVIEW

■ We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A judgment in a criminal case is a final order from which an appeal may lie. *Brown v. People*, 49 V.I. 378, 380 (V.I. 2008).

■ Beaupierre failed to object to the Superior Court's sentence. Therefore, we review his arguments for plain error. *See* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *Murrell v. People*, 54 V.I. 327, 336 (V.I. 2010) (explaining that "appellate courts have consistently held that illegal sentences, by their very nature, fulfill the requirements of the plain error test in that they both affect a criminal defendant's substantial rights and seriously affect the fairness, integrity or public reputation of judicial proceedings," and holding that as a result, a sentence may be reviewed for plain error notwithstanding a defendant's failure to challenge such a sentence) (internal quotation marks omitted); *see also United States v. Moyer*, 282 F.3d 1311, 1319 (10th Cir. 2002); *United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000); *United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996); *United States v. Rodriguez*, 938 F.2d 319, 322 (1st Cir. 1991). To find a plain error, this Court must find (1) an error, (2) that is plain, and (3) that affected substantial rights. *Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). If we determine the error meets those requirements, we may grant relief in our discretion if (4) we feel the error seriously affects the "fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

## III. DISCUSSION

### A. Mandatory minimum sentences do not violate due process.

Beaupierre asserts that mandatory minimum sentences violate due process because they remove the trial court's discretion to consider mitigating factors to reduce the sentence below the legislatively

determined minimum sentence.[1] In other words, Beaupierre asserts that he has a fundamental right under the Due Process Clause of the Fourteenth Amendment to individualized sentencing at a trial judge's discretion, and the legislature's determination that his sentence cannot fall below a certain threshold, in this case ten years, violates that right.

■ "The Due Process Clause not only requires that the government follow appropriate procedures when it seeks to 'deprive any person of life, liberty or property,' it also prevents 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Alexander v. Whitman*, 114 F.3d 1392, 1402 (3d Cir. 1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Thus, the Due Process Clause has a substantive guarantee that "all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 847, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (quoting *Whitney v. California*, 274 U.S. 357, 373, 47 S. Ct. 641, 71 L. Ed. 1095 (1927) (Brandeis, J., concurring)).

■ Before we can determine whether the mandatory minimum sentence provision of rape in the first degree, codified at 14 V.I.C. § 1701, violates due process, we must first determine what test to use. If the right burdened by the complained-of legislation, in this case to individualized sentencing at the discretion of a trial judge, is a "fundamental" right protected under the due process clause, then we apply the strict scrutiny test. *Roe v. Wade*, 410 U.S. 113, 155, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). To successfully withstand strict scrutiny review, the government must show that the law advances a compelling state interest that is narrowly tailored to restrict the fundamental right to the least extent necessary to meet the compelling state interest. *Id.* On the other hand, if the right asserted by the appellant is not a "fundamental" one, then we apply the rational basis standard of review. Under the much less stringent rational basis test, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the

---

[1] To support his argument, Beaupierre depends on the history of judicial discretion in sentencing convicted offenders in the American judicial system. Although Beaupierre does not use the words "due process" in his analysis of judicial history, the cases he relies on all discuss judicial discretion in the context of due process challenges. (*See* Appellant Br. 5-8.) Therefore, since Beaupierre fails to otherwise explain why this history alone would be sufficient for this Court to reverse his sentence, we construe his argument as a due process challenge.

legislature could rationally conclude was served by the statute." *Alexander*, 114 F.3d at 1403 (quoting *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995)).

■ To establish that a right is fundamental for substantive due process purposes, we must find that individualized sentencing at the discretion of a trial judge is "fundamental to *our* scheme of ordered liberty and system of justice" or that it is "a right inherent in the human condition." *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020, 3034, 177 L. Ed. 2d 894 (2010); *United States v. Frank*, 864 F.2d 992, 1009 (3d Cir. 1988). To guide the determination of whether a right is fundamental, we consider whether that right is "deeply rooted in the Nation's history and tradition." *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3036 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)); *Griswold v. Connecticut*, 381 U.S. 479, 487, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965) (Goldberg, J. concurring).

■ Beaupierre relies heavily on the history of sentencing within the American judicial system to support his claim. Unfortunately, Beaupierre's argument is only possible with a narrow reading of history. While the modern trend was for a time towards indeterminate sentencing which left much discretion with the trial judge, the Supreme Court of the United States has noted that "it has not always been so. In the early days of the Republic, when imprisonment had only recently emerged . . . the period of incarceration was generally prescribed with specificity by the legislature. Each crime had its defined punishment." *United States v. Grayson*, 438 U.S. 41, 45, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978). It was not until the mid-19th century that the trend shifted to providing broad discretion to trial judges to set punishments within a range. *See Apprendi v. New Jersey*, 530 U.S. 466, 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Court of Appeals for the Third Circuit also noted in a challenge virtually identical to this one:

> [The defendant] contends that because sentencing is an inherently judicial function, Congress lacked constitutional authority to remove judicial discretion in sentencing. While the pronouncement of sentence after a trial or a guilty plea may be an inherently judicial function, the proposition that specifying the sentence is an inherently judicial function is not supportable either by history or by the text of the Constitution. The Supreme Court has consistently recognized that Con-

gress has plenary authority over the designation of appropriate punishment for federal crimes. The early practice was for Congress to prescribe specific punishments for specific crimes, and it was only much later that Congress delegated to the federal courts the broad discretion in sentencing which they have exercised in recent years. The Supreme Court rejected the proposition that the power over sentencing is inherently judicial when it decided that Congress' delegation of the authority to determine release dates to the Parole Commission validly implied that the judge has no enforceable expectations with respect to the release date, short of the statutory term. Likewise, this court in *Geraghty v. United States Parole Commission*, squarely held that the legislation creating the federal parole board was not an impermissible delegation of an inherently judicial function. Thus, we hold that Congress may lawfully curtail judicial discretion in sentencing.

*Frank*, 864 F.2d at 1010 (citations omitted).

 Beaupierre also relies on *Williams v. Oklahoma*, 358 U.S. 576, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959) and *Karpouzis v. Government of the Virgin Islands*, 41 V.I. 179, 58 F. Supp. 2d 635 (D.V.I. App. Div. 1999), which both deal with due process questions in the context of a judge actually exercising discretion during sentencing. Both of these cases stand for the proposition that when a sentencing judge is exercising discretion in his sentence, due process permits and requires him to take into account all aggravating and mitigating factors. *See Williams*, 358 U.S. at 584-86 (holding a trial judge may consider murder charge in another jurisdiction as an aggravating factor to a kidnapping charge where the events happened together); *Karpouzis*, 41 V.I. at 184-86, 58 F. Supp. 2d at 639-40 (holding a trial judge "over-individualized" a sentence, exceeding statutorily permitted penalties in three respects, and singling out the particular defendant for special treatment because of the malfeasance of a class of persons in the same business). At base, then, these cases mean no more than when a judge has discretion, he must not use it arbitrarily or capriciously. They do not hold that due process requires that the judge be given that discretion in the first place.

The reason Beaupierre does not cite to case law holding that due process fundamentally protects individualized sentencing is because the case law is decidedly against that claim- every United States Court of

Appeals that has addressed the question has held against Beaupierre's position[2] and Supreme Court dicta supports those holdings.[3]

 In light of the foregoing, then, we agree with every court to address the issue that there is no fundamental due process right to individualized sentencing. So, mandatory minimum sentences will only violate due process if they do not pass the rational basis test. *See Alexander*, 114 F.3d at 1403. To survive that test, the government need only show that the Legislature had a legitimate interest and that the law is rationally tailored to further that legitimate interest. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). The People pointed to a series of interests that the mandatory minimum sentence for rape in the first degree is intended to address: crime deterrence and uniformity in sentencing. We find that both crime deterrence and uniformity in sentencing are legitimate state interests. *See United States v. Di Francesco*, 604 F.2d 769, 787 (2d Cir. 1979) (acknowledging that "improved uniformity in sentencing" is a legitimate state interest), *rev'd on other grounds* 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980); *Campbell v. State*, 268 Ga. 44, 485 S.E.2d 185, 187 (1997) (holding that mandatory minimum sentences "bear[] a reasonable relationship to the legitimate legislative concern of deterring crime . . . ."). We also note that retribution can be a legitimate penological goal for a legislature, so long as it does not violate the Eighth Amendment

---

[2] *Ehrsam v. Rubenstein*, 917 F.2d 764, 766 (3d Cir. 1990) ("We reaffirm our previously expressed view that the Due Process Clause permits mandatory sentences."); *United States v. Wilkins*, 911 F.2d 337, 339 (9th Cir. 1990) ("Criminal defendants do not have a constitutional right to individualized sentences, and the legislature may set fixed mandatory and determinate sentences for particular offenses."); *United States v. Vizcaino*, 870 F.2d 52, 56 (2d Cir. 1989) ("[W]e hold that there is no constitutional right to judicial discretion in individualized sentencing. Appellant identified no precedent to support such a right, even inferentially. One would suppose that such a right, if it existed, would surely have been recognized by now, given the varying mandatory minimum sentencing practices the federal government and the states have used in our nation's history."); *United States v. White*, 869 F.2d 822, 825 (5th Cir. 1989) ("Appellants argue that this restricted discretion violates the Due Process Clause because it unduly limits the right of an accused to present mitigating factors prior to sentencing. There is, however, no such right guaranteed by the Constitution. The Constitution does not require individualized sentences . . . . Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses.") (citation omitted).

[3] *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 602, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) ("[T]he concept of individualized sentencing in criminal cases generally, although not constitutionally required, has long been accepted in this country.").

protection against cruel and unusual punishments. *See Ewing v. California*, 538 U.S. 11, 25, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (plurality opinion); *Chapman v. United States*, 500 U.S. 453, 465, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991) ("Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . .") (citation omitted).

 Having identified the state interests, we have no trouble concluding that the mandatory minimum sentence for rape in the first degree is rationally related to deterrence, retribution, and uniformity in sentencing. First, it is rationally related to deterrence by both specifically deterring the individual found guilty of rape in the first degree from doing it again for at least ten years and, by increasing the minimum penalty, the Legislature could rationally conclude that the mandatory minimum sentence would deter the behavior at large. *See Campbell*, 485 S.E.2d at 187. Second, because rape in the first degree is a very serious violent crime in the Virgin Islands, the Legislature could simply have wanted to "deal more severely" with those who "pose a substantial danger to society," which rationally relates to the penological goal of retribution. *United States v. Klein*, 860 F.2d 1489, 1501 (9th Cir. 1988). Finally, mandatory minimum sentences for convicted first degree rapists rationally relates to sentence uniformity by guaranteeing that, no matter what the extenuating circumstances, all individuals that commit rape in the first degree receive at least ten years in prison. Therefore, because there is no fundamental right to individualized sentencing under the Due Process Clause of the Fourteenth Amendment, and because mandatory minimum sentences rationally relate to legitimate government interests, we reject Beaupierre's contention that his mandatory minimum sentence violates due process.

### B. Mandatory minimum sentences are not cruel and unusual punishments.

 Beaupierre's next argument, that mandatory minimum sentences are cruel and unusual punishments in violation of the Eighth Amendment, is difficult to follow. The Eighth Amendment "cruel and unusual" clause

has been doctrinally split into two distinct concepts: that some penal practices are so heinous they must be categorically barred (the facial challenge) or that a particular defendant's penalty is so high it is out of proportion with the crime committed (the as-applied challenge). *See Graham v. Florida*, 560 U.S. ___, ___, 130 S. Ct. 2011, 2021-22, 176 L. Ed. 2d 825 (2010) (explaining the doctrinal development of the two concepts). It appears Beaupierre is attempting to make a facial challenge to mandatory minimum sentences as a whole, but does so through the guise of the as-applied challenge standard reaffirmed in *Ewing*, 538 U.S. 22-23 (plurality opinion) (recognizing a narrow proportionality test in noncapital cases). Beaupierre relies on *People v. Thomas*, 45 Cal. App. 3d 749, 119 Cal. Rptr. 739 (1975), which permitted the appellant an as-applied challenge similar to the one in *Ewing* to be used against a parole eligibility period based on language from the California Constitution. *Id.* at 745-46. Although Beaupierre argues for the facial illegitimacy of mandatory minimum sentences, he fails to provide any argument based on the standard for Eighth Amendment facial attacks most recently reaffirmed in *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022-23 (citing *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)). In other words, Beaupierre fails to argue the particular facts of his case for the asapplied standard he cites to, instead trying to make facial arguments without accessing, or arguing, the standard for facial challenges. For the sake of completeness and fairness, this Court will reconstrue Beaupierre's challenge as both a facial and an as-applied challenge.

### 1. Mandatory minimum sentences are not facially invalidated by the Eighth Amendment.

All Eighth Amendment challenges are considered by applying an "evolving standard[] of decency that mark[s] the progress of a maturing society." *See Graham*, 560 U.S. at ___, 130 S. Ct. at 2021. To determine if a particular punishment fails categorically due to the Eighth Amendment's ban on cruel and unusual punishment, the Supreme Court of the United States has designed a two-part test. *See id.* at ___, 130 S. Ct. at 2022. This Court must first consider the " 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 552,

125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). Next, if the Court can establish a national consensus, the Court "must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Id.*

■■ The first step, requiring objective indicia of a national consensus, can be established either by reviewing the legislation of the states and the federal government or the actual implementation of the specific punishment in question by the states and federal government. *See id.* at ___, 130 S. Ct. at 2023. In this case, neither method satisfies the test in Beaupierre's favor. As of 1994, *all* of the states and the federal government had mandatory minimum sentences in their respective codes. *See* U.S. Dep't of Justice, *1996 National Survey of State Sentencing Structures* 6 (1998), *available at* http://www.ncjrs.gov/pdffiles/169270.pdf. We have found no evidence of any shift away from that trend. *See* Michael Tonry, *Determinants of Penal Policies*, 36 CRIME & JUST. 1, 27 (2007) ("Such laws . . . include . . . mandatory minimum sentence laws in all states . . . ."). Having found no national consensus against the implementation of mandatory minimum sentences, this Court is not required to consider its individual judgment on the practice of mandatory minimum sentences before dismissing Beaupierre's facial attack. *See Graham*, 560 U.S. at ___, 130 S. Ct. at 2022.

### 2. Beaupierre's mandatory minimum sentence is not a cruel and unusual punishment.[4]

■ The Supreme Court of the United States has recently reaffirmed that the Eighth Amendment has a "narrow proportionality principle" in

---

[4] At oral argument, Beaupierre stressed the belief that this Court should vacate the trial court's sentence and remand for further proceedings to permit the lower court to do a proportionality review, rather than have this Court exercise that review itself. Again, we note that Beaupierre did not object to the mandatory minimum sentence below, nor did he request a proportionality review of the mandatory minimum. In essence, then, Beaupierre argues that we should find plain error in the trial court's failure to *sua sponte* raise proportionality and place on the record its findings as to the mandatory minimum sentence. If we were to agree with Beaupierre then we would be, in effect, requiring every sentencing judge to do an on-record proportionality review for every case or it would be reversible error. Since this proportionality principle is very narrow in non-death penalty cases and only available in extreme circumstances of gross disproportionality, we decline to place such an affirmative burden on all sentencing judges going forward. Instead, we will review this claim for plain error, just

non-death penalty cases that "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* at ___, 130 S. Ct. at 2021. Distilling the Eighth Amendment non-capital case law for as-applied challenges, the Court declared that:

> A court must begin by comparing the gravity of the offense and the severity of the sentence. "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

*Id.* at ___, 130 S. Ct. at 2022 (citations omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in the result)).

 In determining whether a sentence is extreme enough to be considered grossly disproportionate, we find it helpful to review precedent from the Supreme Court of the United States. In *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), the Supreme Court affirmed a judgment overturning a life sentence without possibility of parole for a defendant's seventh nonviolent felony of passing a bad check. *Id.* at 296-97. On the other hand, in *Harmelin*, the Court upheld a sentence of life without parole for a conviction of 650 grams of cocaine. *Harmelin*, 501 U.S. at 996. Likewise, in *Ewing*, the Supreme Court upheld a twenty-five-to-life sentence for the theft of three golf clubs that triggered California's "three strikes" law. *Ewing*, 538 U.S. at 30-31. In *Harmelin*, Justice Kennedy, in the controlling opinion, explained the difference between the offense in *Solem* and the non-violent offenses in the cases that came after *Solem* by noting that the conduct in *Solem* was "one of the most passive felonies a person could commit," as the crime was based in negligence, and it was "viewed by society as among the less serious offenses." *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and concurring in the result) (quoting *Solem*, 463 U.S. at 296). Justice

---

as we would any other alleged error committed by the trial court that was not raised before it.

Kennedy found that the possession and distribution of the cocaine in *Harmelin* was a more active offense than the one in *Solem*, and had a greater impact on society as a whole. *Id.* Indeed, Justice Kennedy noted that " 'no one suggests that a statute providing for life imprisonment without parole may not be applied constitutionally to . . . violent criminals.' " *Id.* (quoting *Solem*, 463 U.S. at 299) (brackets omitted). In sum, it is clear from the United States Supreme Court precedents that the Eighth Amendment as-applied challenges are successful only when a defendant has been convicted of a non-violent, less serious and more passive offense that carries an incredibly steep punishment.

 In this case, Beaupierre's sentence is not grossly disproportionate. He is challenging only his ten year mandatory minimum, to which the Supreme Court has never applied the Eighth Amendment. Even if we were to permit such a challenge, Beaupierre falls far short of convincing us that the mandatory minimum sentence is disproportionate.[5] Beaupierre's conviction was not for a non-violent felony and the sentence he challenges is only for ten years. Beaupierre committed a series of violent acts which resulted in *ten felony convictions*, nine of which are crimes of violence. Despite the fact that the Supreme Court of the United States has upheld sentences for drug possession or relatively minor felony theft that carried life sentences, Beaupierre requests that we stretch the concept of "proportionality" beyond all recognition and hold that his ten year mandatory minimum is grossly disproportionate, despite the violent felonies for which he was convicted. We decline to do so. Because we have determined that Beaupierre's sentence is not grossly disproportionate, we are not required to compare the sentence for this crime to others in this jurisdiction or others.

 Since mandatory minimum sentences are not unconstitutional categorically, and since Beaupierre's sentence is not unconstitutional as applied, the trial court committed no error by imposing the sentence.

---

[5] The California court in *People v. Thomas*, relied on heavily by Beaupierre, did permit a similar challenge under the California constitution to go forward. *Thomas*, 119 Cal. Rptr. at 745-46. There, the California court found that a fifteen year minimum sentence before eligibility for parole violated the California constitution's ban on cruel and unusual punishment when applied to simple heroin possession. *Id.* Our research found no evidence that even the more lenient California court would permit any violent felon to challenge his ten year mandatory minimum sentence, much less an individual convicted of the state's highest degree of rape.

## C. Mandatory minimum sentences do not violate the separation of powers doctrine, nor do they impermissibly endanger judicial independence.

Beaupierre's next argument relies on language from the United States Supreme Court which he claims indicates that Article III[6] powers cannot be delegated to administrative agencies without violating the doctrine of separation of powers. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851-52, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986). Beaupierre asserts that sentencing is a judicial power, and thus to remove judicial discretion relegates the judge "to performing an administrative, if not clerical function." (Appellant Br. 11.)

 Beaupierre's argument is flawed. First, the holding of *Commodity Futures* refutes the very point for which Beaupierre cites it. There, the United States Supreme Court held that it is *not* a violation of constitutional doctrines for Congress to delegate to an administrative agency the right to hear and decide common law counterclaims implicated in agency adjudications. *Commodity Futures Trading Comm'n*, 478 U.S. at 851-52. The Court makes it clear that the lines separating the branches of government are not rigid ones. *Id.* Moreover, Beaupierre's assertion, unsupported by any citation to law, that sentencing is an exclusively judicial power fails to take into account the reality of legislation in the nation and the history of sentencing. *See supra* Section III. A. Since we have already discussed extensively why sentencing is not a purely judicial function *supra*, we will not belabor the point again.

## D. This Court has no authority to review and set aside mandatory minimum sentences for unreasonableness.

Beaupierre's final argument rests on an assertion that this Court should retain the authority to review mandatory minimum sentences for

---

[6] We note that this Court is not an Article III court and the idea of what falls within the "judicial power" is not the same in the Virgin Islands as it is within the federal government. *See V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280 (V.I. 2008) (Acknowledging that "the Superior Court is not an Article III court" and stating that only "*some* aspects of Article III[] . . . have been incorporated into Virgin Islands jurisprudence.") (emphasis added). Regardless, because Beaupierre's argument is based on the same flawed concept as his due process argument, that sentencing is a purely judicial function, we need not determine today what differences exist in the territorial doctrine of separation of powers from the federal doctrine.

"unreasonableness" in a manner similar to that prescribed in *United States v. Booker*, 543 U.S. 220, 261, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Relying on *Booker*, Beaupierre argues that we should be capable ordering the Superior Court to dismiss the minimum penalties set by the Legislature if we feel that the penalty is "unreasonable." Beaupierre recognizes that, of course, the federal sentencing guidelines do not apply to the Superior Court of the Virgin Islands. His argument relying on *Booker* does so through comparison: (1) the Guidelines have many mandatory sentence ranges, (2) in *Booker*, the United States Supreme Court determined that all Guidelines sentences were subject to review for unreasonableness, (3) therefore, the Virgin Islands laws that have mandatory minimum sentences should also be subject to such review.

Beaupierre's argument misapprehends the holding of *Booker* and the purpose of the unreasonableness review it espouses. Prior to *Booker*, a federal trial judge was legally required to consult the guidelines after a defendant's conviction, compare the defendant's criminal record to the offense level, adjust it for any aggravating or mitigating factors as set out in the guidelines, and impose the sentence that resulted from that calculation unless it exceeded the statutory penalty that was permissible for the crime the defendant was convicted of. *See Booker*, 543 U.S. at 233-34. The Guidelines were designed to take into account various factors and set a constrained penalty range within the statutory minimum and maximum for the offense to guide the trial judge's discretion and create greater uniformity in criminal sentences for the same offense.

In *Booker*, the United States Supreme Court held that, because a judge could increase the potential maximum sentence of a defendant without presenting those aggravating facts to the jury, the section of the Guidelines that made them binding on district court judges was unconstitutional based on the Sixth Amendment right to a jury trial in accordance with its precedents *Blakley v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Booker*, 543 U.S. at 244. The Court's ruling had nothing to do with the propriety of mandatory minimum sentences; instead the Court based its decision on what issues must be presented to a jury before a judge can rely on those facts to set a sentence. *See id.* The Court felt that the Guidelines were still a useful tool, however, and retained the Guidelines as advisory, excising only two portions: the portion that made the Guidelines binding and the

portion that dealt with de novo review by appellate courts of all departure from the Guidelines standards. *Id.* at 258-60. Because the Court was required to excise the section dealing with the standard of review, the Justices felt obligated to come up with a new one to guide the lower courts and chose a standard of "unreasonableness." *Id.* at 261.

 In light of *Booker*, the contemporary sentencing procedure in the federal district court follows these steps: a district court first reviews the advisory Guidelines to determine what the Guidelines suggest, then the judge takes into account all the circumstances of the case, and sets a sentence that falls within the statutory bounds of the underlying conviction (including any mandatory minimums), but is no longer required to fall within the Guidelines calculations. *See Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007). If appealed, the United States Court of Appeals will then review that sentence for unreasonableness, regardless of whether it falls within the Guidelines range or not. *See id.*

 Therefore, *Booker* does not provide a trial judge the authority to ignore valid legislative decisions about maximum and minimum penalties based on a determination of that statute's "reasonableness" or "unreasonableness" in the circumstances. The judge is still constrained by statute; he is simply no longer constrained by the Guidelines since that portion making the Guidelines binding was declared unconstitutional based solely on the Sixth Amendment's right to a jury trial — it had nothing to do with mandatory minimum sentences. *See Booker*, 543 U.S. at 258-60. The standard of unreasonableness only comes into play to ensure that the trial judge does not abuse his discretion by setting an unreasonable sentence within the binding statutory range. *Id.* Thus, Beaupierre's argument that *Booker* provides any authority for this Court to allow trial judges to ignore valid legislatively set penalty provisions has no merit.

### IV. CONCLUSION

 The Due Process Clause of the Fourteenth Amendment does not provide for individualized sentencing, therefore Beaupierre's due process challenge to his mandatory minimum sentence cannot succeed. Likewise, because of the uniform nationwide practice of permitting legislatures to specify mandatory minimum sentences, they are not unconstitutional as cruel and unusual punishments on their face.

Additionally, Beaupierre's ten year mandatory minimum sentence for rape in the first degree pursuant to 14 V.I.C. § 1701 is not so disproportionate in this case as to be unconstitutional. Becaupierre's final argument, that we should review all sentences for "unreasonableness" and therefore have the authority to order the Superior Court to impose less than the legislatively determined mandatory minimum sentence, is based on a flawed reading of *Booker*. Therefore, this Court affirms the trial court's sentence.