# RALPH G. BRATHWAITE, JR., Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S.Ct. Criminal No. 2011-0080

Supreme Court of the Virgin Islands

January 9, 2014

420

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

ATIIM ABRAHAM, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

(January 9, 2014)

SWAN, Associate Justice. Ralph G. Brathwaite, Jr., was convicted of several crimes relating to the rape of his minor daughter. He asserts that during trial his constitutional rights were violated, that the evidence was insufficient to convict him of the crimes charged, and that his sentences were imposed in violation of territorial law. We conclude that no reversible errors were committed during trial, and that the evidence was sufficient to convict him.

## I. FACTUAL AND PROCEDURAL HISTORY

At numerous times between March and September 2010, Ralph G. Brathwaite, Jr. ("Brathwaite") engaged in sexual acts with M.T., his then twelve-year-old daughter. The victim, who lived with her mother, step-father, and siblings in Estate Thomas, would often visit Brathwaite who resided in Estate Annas Retreat with his girlfriend. When M.T. visited her father, she would occupy her father's bedroom, while Brathwaite and his girlfriend slept on a mattress in the kitchen. M.T. reported that in the late evening of July 30, 2010, after Brathwaite's girlfriend had fallen asleep, Brathwaite came onto the bed where she was sleeping and fondled her body from her breast to her vagina. M.T. testified that Brathwaite inserted his penis into her vagina causing her to start crying. This incident was approximately the seventh time Brathwaite had

sex with M.T. (J.A. vol. I at 25). M.T. reported that Brathwaite had sex with her in 2010 three times in March, one time in May, one time in June, and one time in July.

M.T. was initially afraid to tell her mother about the sexual encounters with Brathwaite because Brathwaite threatened that he would shoot M.T.'s mother, sister and two brothers, if she ever reported what had occurred. M.T. had seen her father with a firearm on numerous occasions.

On September 10, 2010, Brathwaite saw M.T. taking a safari taxi after she had departed her school premises. He questioned M.T. concerning why she was not at home, and she responded that her class ended late. Brathwaite told M.T. that she was going home with him and that he would take her home to her mother later. When they arrived to Brathwaite's house, M.T. changed into shorts and a vest and sat on the bed to watch television. Brathwaite then came onto the bed naked, pulled her onto the bed to lie down, undressed her and inserted his penis into her vagina. M.T. stated that she started to cry. (J.A. vol. I at 27). M.T. stated that when Brathwaite got off of her, he wiped his penis with a towel and left the room.

When M.T. returned home the next day, her mother, G.T., questioned her regarding whether Brathwaite had beaten her because G.T. had heard from a friend that M.T. was beaten by her father. Initially M.T. told her mother that she was being beaten by Brathwaite. After more prying from G.T., M.T. disclosed to G.T. the sexual encounters between her and Brathwaite. (J.A. vol. I at 27).

Subsequently, M.T. was examined at the Department of Health-Family Planning Program. The examination revealed that M.T.'s hymen was not intact and that there were signs of penetration to M.T.'s vagina, and evidence of sexual activity. (J.A. vol. I at 28). The examination did not reveal signs of body trauma.

Brathwaite was charged in a ten-count Superseding Information with five counts of aggravated rape in the first degree,[1] three counts of unlawful sexual contact in the first degree, and two counts of child abuse. During trial, the People presented numerous witnesses including M.T., G.T., medical personnel, and police detectives. One of the

---

[1] The aggravated rape charge in Count III of the Superseding Information was dismissed.

aggravated rape charges was dismissed, and the jury ultimately found Brathwaite guilty of all remaining counts. Brathwaite was sentenced to twenty years' incarceration with five years suspended and credit for time served in pretrial incarceration on Counts I, II, IV, and VIII.[2] The trial court ordered that the sentences for Counts II, IV, and VIII would be served consecutively with the sentence imposed for Count I.[3] Brathwaite was further ordered to receive psychiatric evaluation pursuant to 14 V.I.C. § 1700, to participate in psychosocial counseling, and to register as a sex offender pursuant to 14 V.I.C. §§ 1722 and 1724. This timely appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." It is well established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of this statute. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (citing cases). Accordingly, we have jurisdiction over this appeal.

## III. ISSUE AND STANDARD OF REVIEW

On appeal, Brathwaite alleges that (A) the prosecutor's biblical references during closing argument and at sentencing were improper, (B) the evidence was insufficient to convict on any charge in the Information because the bulk of the evidence came from the sole testimony of the victim, (C) his conviction for child abuse under 14 V.I.C. § 505 must be vacated because the provisions of the statute are unconstitutionally vague, and (D) his sentences are illegal split sentences in violation of 5 V.I.C. § 3711 and must be vacated.

We engage in a harmless error analysis when determining whether improper prosecutor comments necessitate a new trial. *United States v.*

---

[2] All these counts charged aggravated rape in the first degree in violation of 14 V.I.C. § 1700(a)(1).

[3] Counts V, VI, and VII were merged with Count IV, and no separate sentences were imposed. Similarly, Counts IX and X were merged with Count VIII and no separate sentences were imposed.

*Gambone*, 314 F.3d 163, 177 (3d Cir. 2003). We exercise plenary review over sufficiency of the evidence claims, and we interpret the evidence in the light most favorable to the People as the verdict winner. *Ramirez v. People*, 56 V.I. 409, 417 (V.I. 2012); *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). In making our determination, we do not weigh the evidence or substitute our credibility determinations for that of the jury's. *Id.* Our review of a court's construction of a statute is also plenary. *LeBlanc v. People*, 56 V.I. 536, 540 (V.I. 2012) (Internal citation omitted).

We review for plain error those issues not objected to at trial. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). To find plain error, an appellate court must find (1) an error, (2) that is plain, and (3) that affected substantial rights. If the court determines the error meets those requirements, it may grant relief in its discretion if it decides that the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009) (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

## IV. DISCUSSION

### A. Prosecutor's Biblical References

■ The prosecutor made biblical references during closing arguments and at sentencing. Brathwaite contends that the biblical references made by the prosecutor were improper. To determine whether a prosecutor's comment's constituted reversible error we "we must evaluate whether the statement was improper, . . . [and] whether the improper statement so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeSilvia v. People*, 55 V.I. 859, 872 (V.I. 2011) (internal citations and quotation marks omitted). It is improper for a jury to appeal to the passions, emotions, and prejudices of the jury because it diverts the jury's attention from deciding the case on the evidence presented at trial. *Id.*

The following exchange occurred between the People and the trial court at the sentencing hearing:

> [People]: ___ Your Honor, these are some very serious charges, and different people react in different ways. In fact, in Genesis 34, we read how when Dinah, Jacobs's daughter went out Your Honor, and she was raped, how her brothers took matters into their own hands.

426

[Trial Court]: ___ Because she was raped by her brother.

[People]: ___ She was raped by She-chem, his father, but they killed the whole town, your honor. Your Honor, Jesus said suffer the little children [u]nto me. He said it is better for a mill stone to be placed around their necks and cast into the sea than for them to be injured, Your Honor.

(J.A. vol. III at 12-13.) These comments were not objected to by Brathwaite at trial. These comments satisfy the first prong of the prosecutorial misconduct test because the comments were a blatant attempt to appeal to any religious sentiments that the trial court might have.[4]

██ It is well settled that religion may not play a role in the sentencing process. *See e.g., United States v. Giry*, 818 F.2d 120, 133 (1st Cir. 1987), *cert. denied*, 484 U.S. 855 (1987) (references to the Bible are an improper appeal to jurors' private religious beliefs); *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987), *reh'g and reh'g en banc denied*, 814 F.2d 658 (5th Cir. 1987), *cert. denied*, 483 U.S. 1033 (1987) (biblical evidence is irrelevant during the sentencing phase). In a case similar to the instant matter, the Supreme Court of Tennessee held that the reading of biblical passages to the jury by the jury foreman during deliberations in the penalty phase of a capital case was an error that required re-sentencing. *See State v. Harrington*, 627 S.W.2d 345, 350 (Tenn. 1981), *cert. denied*, 457 U.S. 1110 (1982). *See generally Jones v. Kemp*, 706 F. Supp. 1534, 1559 (N.D. Ga. 1989).

██ Here, the People's religious references were error because the comments did not have a secular purpose, but seemed to have had the purpose of requesting a harsher sentence for Brathwaite based on religious tenets. The use of religious authority to support a result advocated for is improper. *See Sandoval v. Calderon*, 241 F.3d 765, 776 (9th Cir. 2001).

However, we find that on the present record it is clear beyond a reasonable doubt that this error did not seriously affect the fairness or

[4] We find specious Brathwaite's argument that the plain error doctrine should not apply because Brathwaite was restricted from objecting for fear of "God's punishment or eternal damnation if he opposed the words of God." (Br. of Appellant at 13). This argument is not supported by the record and is nothing more than speculation as to what Brathwaite's thoughts might have been during these comments.

integrity of the sentencing proceedings. While we admonish the People for using biblical references or invoking religiosity at sentencing, and we are troubled by the People's blatant attempt to sway the trial court into giving a harsher sentence based on religious principles, we do not find that the comments constituted reversible error. Brathwaite has failed to establish that the prosecutor's "brief and isolated" comments at sentencing so infected the fairness of the sentencing proceeding as to render the sentence a violation of due process in light of the entire proceeding. *Francis*, at 391. Significantly, the Superior Court, when explaining the reasons for the sentence it ultimately imposed, did not reference the People's religion argument, reflecting that the judge properly disregarded the comments. *Cf. Dunlop v. People*, S. Ct. Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41, at *14-15 (V.I. Sept. 15, 2009) (unpublished) (judge, when sitting as trier of fact without jury, is deemed to have followed the law, including disregarding inadmissible evidence) (collecting cases).

■ We also fail to find reversible error in the disconcerting biblical references made by the Prosecutor in his closing arguments. The Prosecutor stated that:

> So, if [M.T.] took several minutes to try to understand "what is truth," ladies and gentlemen of the jury, Pontius Pilate did the same thing. Its – when he saw Jesus, Pontius Pilate, himself, asked, 'What is truth?' He didn't even know that the truth was standing right in from of him. Because Jesus said, "I'm the way, the truth, and the light." So if Pontius Pilate did not know what was truth, in terms of philosophical argument, how can we expect [M.T.] to know, "What is truth?"

(J.A. vol II at 280-81.) These comments were also not objected to at trial. Unlike the statements made at sentencing, this biblical reference was not of the type used to encourage the jury to convict a defendant based on religious sentiments. On the contrary, these comments were in response to defense counsel's insistence that M.T. define 'truth' and 'lies' during cross examination, and M.T.'s hesitancy in articulating a definition. (J.A. vol. I at 137-39.)

A decision of the United States Court of Appeals for the Eleventh Circuit in a similar case is instructive. The Eleventh Circuit upheld the lower court's determination that the biblical references made by the

prosecution during closing arguments were not improper because they did not urge the imposition of the death penalty based on biblical teachings, but rather "reference[d] principles of divine law related to the penological justifications for the death penalty." *Greene v. Upton*, 644 F.3d 1145, 1158 (11th Cir. 2011). The court concluded that not only did the Prosecution not appeal to the jury's religious sentiments, but even if the comments were improper, there was no probability that the comments changed the results of the trial. *Id.* at 1158-59.[5]

■ We strongly caution against making unnecessary religious references in order to avoid the risk of distracting the jury from its sole purpose of applying secular law and to avoid the risk of reversal. *State v. Ceballos*, 266 Conn. 364, 832 A.2d 14, 35 (Conn. 2003) (internal citations omitted). In this case, however, the Prosecutor's comments did not importune the jury to find guilt based on any impermissible basis. Moreover, we do not find that the biblical references at closing arguments resulted in a harsher sentence based on impermissible considerations. Accordingly, we fail to find reversible error in the Prosecutor's biblical pronouncements.

## B. Sufficiency of the Evidence

Brathwaite contends that the People failed to meet its burden in proving all the elements of any of the offenses charged. Brathwaite specifically asserts insufficiency in the proof of the elements to convict on aggravated rape. To convict on aggravated rape, the People must prove beyond a reasonable doubt that the defendant perpetrated an act of sexual intercourse or sodomy with a person under the age of thirteen, who was not the perpetrator's spouse. 14 V.I.C. § 1700(a)(1). Brathwaite argues that the evidence was insufficient to establish that M.T. was under the age of thirteen at the time the acts were committed and insufficient to establish that there was sexual contact between M.T. and Brathwaite.

---

[5] The Eleventh Circuit also concluded that there were no United States Supreme Court decisions that involve the propriety of biblical references during closing argument. It noted that under *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974), and *Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).

██ Regarding the issue of the victim's age, Brathwaite claims that proof of M.T's age was not established beyond a reasonable doubt because there was no birth certificate, passport, or baptismal certificate admitted into evidence during trial. To buttress this argument, Brathwaite cites to 8 C.F.R. § 103.2 (2012)[6] which mandates a presumption of ineligibility for immigration benefits, if required documentation such as a birth or marriage certificate is not submitted. This statute is a federal statute outlining the requirements for immigration petitions, applications, and documents and is obviously inconsequential to criminal cases in Virgin Islands courts applying local law.

██ ██ In Virgin Islands criminal proceedings, the sufficiency of the evidence is determined by crediting all reasonable inferences that support the verdict. *Castor v. People*, 57 V.I. 482, 489 (V.I. 2012). At trial, there was sufficient evidence to establish M.T.'s age. Such evidence included the direct testimony of M.T. about her age and date of birth. (J.A. vol. I at 94). M.T. testified that she lived in Estate Thomas all thirteen years of her life. M.T. also testified that she attended Addelita Cancryn Junior High School, an institution that routinely admits students between 12-13 years of age. M.T. also testified about her exact month, day, and year of birth. The jury further heard testimony from M.T.'s mother who directly testified that M.T. was thirteen years old at the time of trial. (J.A. vol II at 30).

Brathwaite insinuates that age cannot be established in Virgin Islands criminal proceedings unless there is documentary evidence. He fails to cite to any legal authority which mandates such a requirement. We decline to create such a requirement here.

██ Brathwaite further implies that direct sworn testimony, which is uncontradicted, uncontroverted, and unimpeached, from an individual regarding the individual's own age, and the testimony of the individual's mother, who was obviously present during the birthing process, are not sufficient evidence of age. This argument is inconsistent with rational thought and well-established common law. Documentation establishing a

---

[6] 8 C.F.R. § 103.2(b)(2) states in pertinent part that:

> [t]he non-existence or other unavailability of required evidence creates a presumption of ineligibility. If a required document, such as a birth or marriage certificate, does not exist or cannot be obtained, an applicant or petitioner must demonstrate this and submit secondary evidence, such as church or school records, pertinent to the facts at issue.

victim's age can be used and is the best evidence where the subject is not available to testify. 45 AM. JUR. PROOF OF FACTS 2D 631, at §§ 4-9 (2013). However, it has never been held, and we refuse to hold today, that a person's age can only be established during trial by the admission of documentary evidence such as birth certificates, baptismal certificates, passports, and similar documents. An individual's testimony regarding the individual's age, though rebuttable, is the "best evidence" and not "secondary evidence." *Fontana v. Ford Motor Co.*, 278 Mich. 199, 270 N.W. 266, 268 (Mich. 1936). *See also McBride v. State*, 78 So.3d 359, 361 (Miss. App. 2011). The simplest way of establishing age is to have the witness directly testify when such witness is available. 45 Am. Jur. Proof of Facts 2d 631, at § 3 (2013). Testimony from a subject's mother is also admissible to verify age. 75 C.J.S. *Rape* § 67 (child's age may be shown "by [the child's] parents or any other person who knows [his or] her age"). M.T. testified at trial. Importantly, the testimony concerning M.T.'s age was never challenged, rebutted, or controverted by the defense during trial.

We conclude that the evidence was sufficient to establish the age of M.T. where the trial record discloses that the jury heard unopposed, unchallenged, uncontroverted, and reliable testimony of M.T.'s age from M.T. and her mother. *See One Ford Mustang, VIN 1FAFP40471F207859 v. State*, 231 S.W.3d 445, 454 (Tex .App. 2007).

Brathwaite's argument that the evidence is insufficient to establish sexual intercourse is similarly spurious. Sexual intercourse is defined as "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination." 14 V.I.C. § 1699(d). Brathwaite argues that no credible evidence links him to the offenses except for the sole testimony of M.T. Brathwaite further contends that the non-existence of DNA evidence on M.T.'s vaginal swabs and Brathwaite's testimony that he never had intercourse with his daughter further buttresses his contention of the lack of evidence to establish any acts of sexual intercourse.

 Case law precedent has emphasized on countless occasions that a court of review must not serve as the usurper of the jury's role as the judges of credibility and must also not engage in reweighing the evidence. *See Stanislas v. People*, 55 V.I. 485, 494 (V.I. 2011); *United States. v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011). If the evidence presented at trial

was sufficient to convict when viewed in a light most favorable to the People, the verdicts must be affirmed.

 A medical expert testified that M.T.'s hymen was detached when M.T. was vaginally examined, thereby confirming penetration of M.T.'s vagina and past sexual activity. Brathwaite is correct that the lack of DNA evidence on M.T.'s vaginal swabs did not directly identify him as the reason M.T.'s hymen was not intact; however, the lack of DNA evidence on the vaginal swabs did not exclude him as a possible cause of the hymen detachment either. M.T. testified that Brathwaite inserted his penis into her vagina on a number of occasions. "[A] rape victim's testimony is sufficient evidence on which a guilty verdict may be based, and the absence of corroborative evidence does not preclude conviction." *Castillo v. Gov't of the V.I.*, 48 V.I. 519, 526 (D.V.I. App. Div. 2006). The testimony of the victim, alone, is sufficient to establish penetration in a rape case. *Gov't of the V.I. v. Garcia*, 232 Fed. Appx. 167, 170 (3d Cir. 2007). A rape victim's testimony can serve as the basis for a conviction even in the absence of DNA or other corroborating scientific and medical evidence. *Francis v. People*, 57 V.I. 201, 211 (V.I. 2012) (internal citations omitted).

 The fact that Brathwaite's testimony contradicted M.T.'s testimony, does not give this Court authority to find M.T.'s testimony not credible and reverse for insufficient evidence. Generally, the testimony of one witness is sufficient to prove any fact at trial, and a conviction can be sustained on the sole testimony of a single witness, even if there is testimony to the contrary. *Francis*, 57 V.I. at 211. (internal citations omitted). "A conviction may be sustained on the testimony of a single witness or victim, even when other witnesses may testify to the contrary." *Id.* (internal quotation marks omitted). Further, "[t]he weight of the evidence is not determined by the number of witnesses who testify for either side, but the quality of their testimony." *Francis v. People*, 57 V.I. 201, 236 (V.I. 2012) (quoting *United States v. Handy*, 454 F.2d 885, 888 (9th Cir. 1971)). The jury was within its province to find M.T. to be a more credible witness than her father, Brathwaite.

 Because we find that the testimony of M.T. was sufficient to establish the elements of all the crimes charged, we reject Brathwaite's

assertion of insufficiency of the evidence to support any of his convictions.[7]

### C. Brathwaite's convictions for child abuse under 14 V.I.C. § 505 are not unconstitutional on vagueness grounds as the statute is applied to this case

 Brathwaite relies on our holding in *LeBlanc v. People*, 56 V.I. 536 (V.I. 2012), in support of his contention that his two convictions for child abuse under 14 V.I.C. § 505 must be vacated because the statute is unconstitutionally vague.[8]

14 V.I.C. § 505 imposes criminal penalties upon any person who:

> abuses a child, or who knowingly or recklessly causes a child to suffer physical, mental or emotional injury, or who knowingly or recklessly causes a child to be placed in a situation where it is reasonably fore-seeable that a child may suffer physical, mental or emotional injury or be deprived of any of the basic necessities of life[.]

14 V.I.C. § 503(a) further defines "[a]buse" as "the infliction of physical, mental or emotional injury upon a child, or maltreatment, sexual conduct with a child, or exploitation of a child by any person."

In *Leblanc*, we held that 14 V.I.C. § 505 was unconstitutionally vague as to whether the Appellant's actions in briefly touching a minor's genitals through her clothing was sexual conduct that rose to the level of

---

[7] Brathwaite also argues that his conviction for unlawful sexual contact in the first degree as charged in Count IX must be vacated. (Br. of Appellant at 16-17). We infer from Braithwaite's obscure argument that he asserts that because sexual intercourse is different from sexual contact, in that intercourse requires penetration and contact only requires a touching, that the conviction for sexual contact cannot stand. Importantly, other than his vague assertions, Brathwaite cites to no legal authority whatsoever to support such a claim. Because Brathwaite was only charged with sexual contact in violation of 14 V.I.C. § 1699 in Count IX, and Count IX does not allege any sexual penetration or intercourse, the difference in the two legal terms is inconsequential.

[8] 14 V.I.C. 505 consists of three charging phrases: "First phrase: Any person who abuses a child, or" Second phrase: "who knowingly or recklessly causes a child to suffer physical, mental or emotional injury, or" Third phrase: "who knowingly or recklessly causes a child to be placed in a situation where it is reasonably foreseeable that a child may suffer physical, mental or emotional injury or be deprived of any of the basic necessities of life. . . ." *Leblanc*, at 542. In Counts VII and X of the Superseding Information, Brathwaite was charged under the first phase for child abuse which is defined by 14 V.I.C. § 503.

433

child abuse. 56 V.I. at 545. We noted that although the touching of the victim's genitals through her clothing clearly constituted sexual contact as defined by 14 V.I.C. § 1699(c),[9] it was unclear whether this behavior constituted "sexual conduct" for purposes of committing child abuse under § 505. *Id.* at 542-44. Although, the provisions of 14 V.I.C. § 505 were not sufficiently definite to put *Leblanc* on notice that his conduct was prohibited, we do not find that to be the case for Brathwaite.

The void for vagueness doctrine is a procedural due process concept derived from the guarantee of due process contained in the Fifth and Fourteenth Amendments. *State v. Thomas W.*, 115 Conn. App. 467, 974 A.2d 19, 24 (Conn. App. Ct. 2009) and *United States v. Maloney*, 513 F.3d 350, 357 (3d Cir. 2008). Under the Due Process Clause, a statute is unconstitutionally vague if it fails to afford a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited. *See Colten v. Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972); *United States v. Fontaine*, 697 F.3d 221, 226, 57 V.I. 914 (3d Cir. 2012). While 14 V.I.C. § 505 was insufficient to put a person of ordinary intelligence on notice that the brief touching of genitals through clothing constituted child abuse, the same cannot be said with regard to sexual intercourse or forcible penetration of a child's vaginal cavity.

To comply with the requirements of due process a statue must give fair warning as to the conduct that is prohibited. *Colton*, 407 U.S. at 110. In criminal cases, a statutory attack based on vagueness may be overcome in any specific case where a reasonable person would know that their conduct puts them at risk of punishment under the statute. *See Fontaine*, 697 F.3d at 226. Therefore, our determination of the vagueness of § 505 must first concern whether this statute is vague as applied specifically to Brathwaite.

Whether one construes the definition of "sexual conduct" broadly or narrowly, sexual intercourse will undoubtedly fall within the

---

[9] 14 V.I.C. §1699(c) states that:

"sexual contact" means the intentional touching of a person's intimate parts, whether directly or through clothing, to arouse or to gratify the sexual desires of any person. The term "intimate parts" means the primary genital area, groin, inner thighs, buttocks, or breasts of a person.

ambit of this term.[10] We have already concluded that "the plain and ordinary meaning of the term ['sexual conduct' under 14 V.I.C. § 505] clearly includes sexual intercourse." *Leblanc*, 56 V.I. at 544. A person of ordinary intelligence would be able to understand that having sexual intercourse with his twelve year old daughter is within the scope of conduct prohibited by the Child Abuse Act. *See Charlemagne v. Gov't of the V.I.*, 2003 U.S. Dist. LEXIS 3109, at *7 (D.V.I. App. Div. Feb. 5, 2003). As we noted in *LeBlanc*, "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." 56 V.I. at 542 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982)). Accordingly, we do not find 14 V.I.C. § 505 to be unconstitutionally vague as applied to Brathwaite. Because his conduct clearly fell within the ambit of what is prohibited by § 505, Brathwaite does not have standing to challenge the vagueness of the statute as applied to other situations. *McIntosh v. People*, 57 V.I. 669, 687 (VI. 2012).

## D. Illegal Sentence

Brathwaite asserts that the sentences imposed by the trial court were illegal split sentences, and as a result, his sentences must be vacated. In its Judgment and Commitment, the trial court sentenced Brathwaite to twenty years of incarceration with five years suspended and credit for time served for each of Counts I, II, IV, and VIII of the information. Brathwaite also asserts that these suspension of sentences for his convictions of aggravated rape are in violation of the provisions of 5 V.I.C. § 3711. Contrary to Brathwaite's assertion, these sentences are not split sentences and the provisions of 5 V.I.C. § 3711 are not applicable to these convictions.

---

[10] As we noted in *LeBlanc*, the only portion of the Virgin Islands Code that defines sexual conduct is 14 V.I.C. § 1027(b) which states that:

As used in subsection (a) of this section, "sexual conduct" means any of the following, whether actual or simulated: sexual intercourse, oral copulation, sodomy, anal-oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, any lewd or lascivious sexual activity, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being actual sexual conduct.

■ An illegal split sentence is a sentence that imposes probation without suspending a portion of the sentence. *Brown v. People*, 55 V.I. 496, 506 (V.I. 2011) (quoting *Gov't of the V.I. v. Martinez*, 239 F.3d 293, 297 (3d Cir. 2001)). *See generally Jackson-Flavius v. People*, 57 V.I. 716, 728 (V.I. 2012) (collecting cases). A sentence that combines a period of probation and a period of incarceration in excess of the maximum sentence of imprisonment authorized by statute is also an illegal split sentence. *Murrell v. People*, 54 V.I. 327, 336 (V.I. 2010).

■ In this case, the trial court suspended a part of the period of incarceration but did not impose a period of probation. Accordingly, one cannot conclude that probation was imposed without suspension, or that the period of probation and incarceration exceeded the statutory maximum period of incarceration. Consequently, the suspensions of part of the sentences cannot be classified as illegal split sentences.

■ Brathwaite's assertion of an illegal split sentence is an incorrect application of the law. Brathwaite's application of 5 V.I.C. § 3711(a) to the suspension of sentences for aggravated rape is also wholly incorrect.[11] The aggravated rape statute under which Brathwaite was sentenced possesses its own suspension clause which supersedes the provisions of 5 V.I.C. § 3711(a). It states in pertinent part that:

> Notwithstanding the provisions of Title 5, chapters 313, 405 and 407, Virgin Islands Code, or any other provisions of law, imposition or execution of the fifteen-year minimum period of incarceration shall not be suspended; neither shall probation, parole, or any other form of release be granted for this minimum period of incarceration.

14 V.I.C. § 1700(c).

■ The suspension of sentence statute on which Brathwaite relies is found under Title 5, Chapter 313 of the Virgin Islands Code, one of the

---

[11] 5 V.I.C. § 3711(a) *states that:*

Upon entering a judgment of conviction of any offense against the laws of the Virgin Islands *not punishable by life imprisonment*, the district court or a Superior Court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

(emphasis added).

chapters in which the aggravated rape statute expressly nullifies. Under 14 V.I.C. § 1700(c), the court is only prohibited from suspending any portion of the minimum 15 year incarceration period. Here, the trial court imposed a sentence of 20 years imprisonment, suspending a period of five years. Brathwaite was therefore effectively sentenced to the statutory minimum of fifteen years.

██ Brathwaite did not object to the suspension of sentences so his claims are reviewed for plain error. Even if Brathwaite had correctly applied the law in this case, he did not demonstrate how the suspension affected his substantial rights. *See Beaupierre v. People*, 55 V.I. 623, 630 (V.I. 2011). Since the trial court did not suspend any portion of the statutory minimum period of incarceration, or imposed a term of probation or parole that would lower the period of incarceration below fifteen years, the suspension of sentence in this case was not error.

## V. CONCLUSION

Based on the foregoing, all of Brathwaite's convictions are affirmed.